**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Gene A. BLANTON, Defendant-Appellee.**

No. 83–5319.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1984.

Decided July 10, 1984.

Joe B. Brown, U.S. Atty., John Philip Williams, argued, Asst. U.S. Atty., Nashville, Tenn., for plaintiff-appellant.

John J. Hollins, argued, Nashville, Tenn., for defendant-appellee.

Before ENGEL and WELLFORD, Circuit Judges, and WEICK, Senior Circuit Judge.

ENGEL, Circuit Judge.

The United States appeals two orders of the United States District Court for the Middle District of Tennessee, the first modifying defendant Gene A. Blanton's sentence to delete the requirement that he stand committed for his $40,000 fine, and the second denying the Government's Motion to Reconsider the change in sentence. We conclude that Rule 35 of the Federal Rules of Criminal Procedure provides no basis for the district court's action in deleting the requirement that Blanton stand committed for the fine, and we therefore reverse and vacate the orders appealed from.

## I.

On July 24, 1981, Blanton pleaded guilty to two counts of highway construction bid rigging in violation of section one of the Sherman Act, 15 U.S.C. § 1 (1982), and one count of mail fraud in violation of 18 U.S.C. § 1341 (1982). He received concurrent sentences of three years on each count and a $40,000 stand committed fine on one of the Sherman Act counts. These sentences were affirmed by the court of appeals. *United States v. Blanton*, 701 F.2d 181 (6th Cir.1982). The mandate of the court of appeals was issued on April 20, 1982 and was entered on the district court docket on April 22, 1982. Blanton began serving his sentences on June 15, 1982.

Blanton filed a motion in the district court on August 4, 1982, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, seeking a reduction of his prison term and an order that he pay the $40,000 fine to the State of Tennessee rather than to the United States. On August 31, 1982, the district judge, taking into account the "disparity" between Blanton's sentence and those of similarly situated defendants, and considering the "total absence of the likelihood of recidivism," *United States v. Blanton*, Nos. 81–30041, 81–30126, slip op. at 2 (M.D.Tenn. Aug. 31, 1982), reduced Blanton's sentence to time served and ordered that he be placed on probation for three years. However, the court denied that portion of the defendant's motion relating to the $40,000 fine. In addition, a special condition of Blanton's probation was that he construct, at his own expense, two 24-foot highway bridges in Tennessee, as he had offered to do in his motion for reduction of sentence.

In the original judgment, the defendant was ordered to pay $20,000 of the fine by September 24, 1981 and the remainder by January 4, 1982. However, in a second amended judgment, dated September 2, 1982, the district court ordered that Blanton "not stand committed for the fine until March 4, 1983, at which time the entire fine shall become due and payable."

Blanton later wrote a letter to the district judge, dated February 21, 1983, in which he asked that his fine be suspended, or that it be "reduced considerably" and the period for payment extended. On March 2, 1983, the district judge amended the judgment once again. The judge noted that he was "informed by the United States Probation Office for the Western District of Tennessee that defendant is in such financial condition that it is totally beyond the realm of possibility" that Blanton could pay the $40,000 fine. *United States v. Blanton*, Nos. 81–30041, 81–30126, slip op. at 1 (M.D.Tenn. Mar. 2, 1983). The district judge went on to state:

> The Court is of the opinion that it would be futile to expect that defendant

will ever be able to pay the fine and, in order that this matter may be closed, the Court will amend the Judgment and Commitment by deleting therefrom any requirement that defendant stand committed for the fine.

*Id.* at 2.

The United States Attorney for the Middle District of Tennessee filed a Motion to Reconsider on March 21, 1983 arguing that the district court did not have jurisdiction to issue its order of March 2. The Government pointed out that, while Rule 35(b) of the Federal Rules of Criminal Procedure allows the district court to reduce a sentence "within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment," Blanton's request for reduction of the fine was made over 10 months after the mandate was issued by the Sixth Circuit. In denying the motion, the district court stated:

> We conclude that at the time defendant became indigent, his sentence became an illegal sentence in that it imposed a period of incarceration for indigency, thus working invidious discrimination solely because defendant was too poor to pay the fine. This discrimination clearly violates the Equal Protection Clause. *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668 [28 L.Ed.2d 130] (1971).

*United States v. Blanton,* Nos. 81–30041, 81–30126, slip op. at 2 (M.D.Tenn. Apr. 11, 1983). The district court held that since Rule 35(a) of the Federal Rules of Criminal Procedure provides that "[t]he court may

correct an illegal sentence at any time," the court did have jurisdiction to set aside the fine. *Id.* On appeal, the Government argues that neither Rule 35(a) nor Rule 35(b) provides a basis for the district court's action. We agree.

## II.

Whether the district court had the power under Rule 35(a) to issue its order of March 2, 1983 depends on whether Blanton's sentence was "illegal" within the meaning of the Rule. The district judge's conclusion that the committed fine had become an illegal sentence was based on *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), which held that " 'the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.' " *Id.* at 398, 91 S.Ct. at 671 (quoting *Morris v. Schoonfield,* 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773 (1970) (White, J., concurring)). At the same time, the Court emphasized in *Tate* that it was not implying "any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." 401 U.S. at 400, 91 S.Ct. at 672.

Congress has established a statutory procedure by which a federal prisoner being held solely for nonpayment of a fine can obtain his release by establishing that he is indigent. 18 U.S.C. § 3569 (1982).[1] Although the statute requires a convict to be

---

1. Section 3569 provides in part:

(a) When a poor convict, sentenced for violation of any law of the United States by any court established by enactment of Congress, to be imprisoned and pay a fine, or fine and costs, or to pay a fine, or fine and costs, has been confined in prison thirty days, solely for the non-payment of such fine, or fine and costs, such convict may make application in writing to the nearest United States magistrate in the district where he is imprisoned setting forth his inability to pay such fine, or fine and costs, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the magistrate shall proceed to hear and determine the matter.

\* \* \* \* \* \*

(b) Any such indigent prisoner in a Federal institution may, in the first instance, make his application to the warden of such institution, who shall have all the powers of a United States magistrate in such matters, and upon proper showing in support of the application shall administer the oath required by subsection (a) of this section, discharge the prisoner, and file his certificate to that effect in the records of the institution.

Any such indigent prisoner, to whom the warden shall fail or refuse to administer the oath may apply to the nearest magistrate for the relief authorized by this section and the magistrate shall proceed de novo to hear and determine the matter.

confined thirty days before he can apply for a discharge on account of indigency, the applicable administrative regulation deletes this requirement. 28 C.F.R. § 2.7 (1983).[2] However, even the regulation appears to contemplate that the convict will be incarcerated at the time he seeks to establish his indigency. *Id.* ("An indigent prisoner may make application to a U.S. Magistrate in the District wherein he is incarcerated or to the chief executive officer of the institution ....").

■ Rule 35(a) allows a district court to correct a sentence that "the judgment of conviction did not authorize." *United States v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Petro v. United States*, 368 F.2d 807, 808 (6th Cir. 1966). While a requirement that defendants be incarcerated before they can challenge their committed fines would arguably violate the Constitution by exposing indigent convicts to automatic jail time, *see Tate v. Short*, 401 U.S. at 398, 91 S.Ct. at 670; *United States v. Estrada de Castillo*, 549 F.2d 583, 584 (9th Cir.1976), we do not believe that such a requirement would render Blanton's *sentence* "illegal" within the meaning of Rule 35(a). In reaching this conclusion, we note first that the district judge, in his opinion denying the Government's Motion to Reconsider, did not hold that the sentence was illegal at the time of sentencing, but rather that it *became* an illegal sentence when Blanton became indigent. We also note that it has not been asserted that Blanton was indigent at the time of sentencing.[3]

■ Thus, this court need not decide whether a committed fine imposed on a defendant who is indigent at the time of sentencing is an "illegal sentence" which may be corrected at any time. We merely hold that Blanton's sentence, which was lawful when imposed, could not be rendered unlawful by his subsequent financial condition. Consequently, the district court did not have the power to "correct" the sentence pursuant to Rule 35(a).

## III.

Blanton argues that under the circumstances of this case, the district court could

---

2. The regulation provides:

   In any case in which a prisoner shall have had a fine imposed upon him by the committing court for which he is to stand committed until it is paid or until he is otherwise discharged according to law, such prisoner shall not be released on parole or mandatory release until payment of the fine, or until the fine commitment order is discharged according to law as follows:

   (a) An indigent prisoner may make application to a U.S. Magistrate in the District wherein he is incarcerated or to the chief executive officer of the institution setting forth, under the institutional regulations, his inability to pay such fine; if the magistrate or chief executive officer shall find that the prisoner, having no assets exceeding $20 in value except such as are by law exempt from being taken on execution for debt, is unable to pay the fine, and if the prisoner takes a prescribed oath of indigency, he shall be discharged from the commitment obligation of the committed fine sentence.

   (b) If the prisoner is found to possess assets in excess of the exemption in paragraph (a) of this section, nevertheless if the chief executive officer of the institution or U.S. Magistrate shall find that retention of all such assets is reasonably necessary for his support or that of his family, upon taking of the prescribed oath concerning his assets the prisoner shall be discharged from the commitment obligation of the committed fine sentence. If the chief executive officer of the institution or U.S. Magistrate shall find that retention by the prisoner of any part of his assets is reasonably necessary for his support or that of his family, the prisoner upon taking the prescribed oath concerning his assets, shall be discharged from the commitment obligation of the committed fine sentence upon payment on account of his fine of that portion of his assets in excess of the amount found to be reasonably necessary for his support or that of his family.

   (c) Discharge from the commitment obligation of any committed fine does not discharge the prisoner's obligation to pay the fine as a debt due the United States.

3. A "Statement of Financial Position" of Blanton and his wife was submitted as an exhibit to an affidavit in support of his Rule 35 motion of August 4, 1982. The statement showed their net worth to have been $140,855 on June 1, 1982, over ten months after his sentencing. In his letter to the district judge dated February 21, 1983, Blanton implied that his alleged indigency resulted at least in part from the expenses he incurred in building the two bridges in Tennessee as a condition of his probation.

issue its order of March 2, 1983, because it retained jurisdiction beyond the 120 day period allowed under Rule 35(b) for a reduction of sentence.

■ Rule 35(b) provides that "[t]he court may reduce a sentence within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal . . . ." This time period "is jurisdictional and may not be extended." *United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979) (dicta); *see* Fed.R.Crim.P. 45(b); *United States v. Robinson*, 361 U.S. 220, 224–26, 80 S.Ct. 282, 285–86, 4 L.Ed.2d 259 (1960). Here, Blanton's letter requesting a reduction of his fine was dated February 21, 1983, which was 305 days after the mandate of the court of appeals was recorded in the district court. On March 2, 1983, the district judge issued his order amending the judgment. Thus, the terms of Rule 35(b), as construed by the Supreme Court in *Addonizio*, do not seem to provide any basis for the district court's order deleting the requirement that Blanton stand committed for the $40,000 fine.

■ In support of his position, Blanton points to opinions of other circuits holding that if the defendant has filed a *timely* motion under Rule 35(b), the district court can rule on it more than 120 days after sentencing. *E.g., United States v. DeMier*, 671 F.2d 1200, 1205–07 (8th Cir.1982). The rationale for allowing such extensions is that strict adherence to the 120 day limitation would cause timely Rule 35(b) motions to fall "by the wayside" due to the pressure of heavy caseloads, forcing defendants "to bear the consequences of circumstances wholly beyond their control." *United States v. Krohn*, 700 F.2d 1033, 1036 (5th Cir.1983); *see United States v. Stollings*, 516 F.2d 1287, 1288–89 (4th Cir. 1975). *But see United States v. Kajevic*, 711 F.2d 767, 770–71 (7th Cir.1983) (dicta), *cert. denied*, —— U.S. ——, 104 S.Ct. 721, 79 L.Ed.2d 182 (1984). This exception to the literal terms of Rule 35(b) is not appli-

cable here, though, since Blanton's motion was not timely filed.

■ We further note that Blanton's request in his letter of February 21, 1983 was "totally new and separate" from his Rule 35 motion of August 4, 1982, and "cannot relate back" so as to allow the district court to consider it as part of Blanton's earlier timely motion to reduce sentence. *United States v. United States District Court*, 509 F.2d 1352, 1356 (9th Cir.), *cert. denied*, 421 U.S. 962, 95 S.Ct. 1949, 44 L.Ed.2d 448 (1975); *see United States v. Fields*, 730 F.2d 460 (6th Cir.1984); *United States v. Counter*, 661 F.2d 374, 376 (5th Cir.1981); *United States v. Inendino*, 655 F.2d 108, 110 (7th Cir.1981); *United States v. Hetrick*, 644 F.2d 752, 756 (9th Cir.1980).

Other cases cited by Blanton have held that a defendant's failure to file a Rule 35(b) motion within the required period should be excused under certain circumstances, such as when the delay in filing has resulted from "reliance on an affirmative statement by the court," *Government of Virgin Islands v. Gereau*, 603 F.2d 438, 442 (3d Cir.1979), or from reliance on a statement in a letter sent to the defendant's attorney by the United States Attorney, *Warren v. United States*, 358 F.2d 527 (D.C.Cir.1965). Late filing has also been excused when it has resulted "from the delay of the prison authorities in mailing what otherwise would have been a [prisoner's] timely request for reduction of sentence." *Dodge v. Bennett*, 335 F.2d 657, 659 (1st Cir.1964). Blanton does not allege, however, that a government official misled him as to the period during which he could move for a reduction of his sentence or that authorities interfered with his efforts to make such a motion. In fact, Blanton's Rule 35(b) motion of August 4, 1982, which did not seek a reduction of the fine but rather an order directing that the fine be paid to the State of Tennessee, was filed within the 120 day period.

■ Since Blanton did not file a timely request for a reduction of the fine and has not shown us any special circumstances

**214**

justifying his delay, we see no reason to depart from the plain meaning of Rule 35(b). We therefore hold that Rule 35(b) does not provide a jurisdictional basis for the district court's order of March 2, 1983.

### IV.

While we reverse and vacate the orders of the district court, we do so without prejudice to Blanton's right to seek relief under the procedure set forth in 28 C.F.R. § 2.7 (1983). We note that the Government is not insisting that Blanton report to a federal penitentiary for service of his sentence before applying for a discharge on account of indigency. It appears then that Blanton's remedy is to make application to the United States Magistrate in the Middle District of Tennessee, who may determine the matter only after the United States Attorney for the District has been given notice and an opportunity to be heard, as required by 18 U.S.C. § 3569 (1982).

REVERSED AND VACATED.