UNITED STATES, Appellee,

v.

**Rafael Jesus DOMINGUEZ,**
**Defendant, Appellant.**

UNITED STATES, Appellee,

v.

**Daniel Joseph MARAVILLA,**
**Defendant, Appellant.**

Nos. 91–1172, 91–1173.

United States Court of Appeals,
First Circuit.

Heard Sept. 4, 1991.

Decided Nov. 19, 1991.

Benjamin S. Waxman, with whom Alan S. Ross and Weiner, Robbins, Tunkey, Ross, Amsel & Raben, P.A., Miami, Fla., were on brief for defendant, appellant Dominguez.

Aida M. Delgado Colon, Acting Federal Public Defender, with whom Irma Lopez DeFillo, Asst. Federal Public Defender, was on brief for defendant, appellant Maravilla.

Lisa J. Stark, Atty., Dept. of Justice, with whom John R. Dunne, Asst. Atty.

Gen., and Jessica Dunsay Silver, Atty., Dept. of Justice, were on brief for U.S.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and CAMPBELL, Circuit Judge.

BREYER, Chief Judge.

The defendants below, two United States Customs officers, appeal sentences imposed following our remand of their criminal case. *United States v. Maravilla,* 907 F.2d 216 (1st Cir.1990). In our first opinion, we described how the defendants abducted a Dominican money courier, who had arrived at the San Juan airport with nearly $700,000, killed him, and stole the money. A jury had convicted both defendants of several federal crimes, including (1) depriving an "inhabitant" of the United States of civil rights, 18 U.S.C. §§ 242 & 2 (Count I); (2) robbery, 18 U.S.C. §§ 1951(a) & 2 (Count II); (3) receiving and transporting stolen money, 18 U.S.C. §§ 2315, 2314, & 2 (Counts III and IV); and (4) various instances of perjury and obstruction of justice, 18 U.S.C. §§ 1623, 1001, & 1503 (Counts V through VIII). *Maravilla,* 907 F.2d at 217. We upheld all their convictions except for Count I, which we reversed on the ground that the money courier's citizenship and the brevity of his planned stay within this country (less than one day) placed him outside the scope of the word "inhabitant" in the civil rights statute. We remanded solely for resentencing.

 The two defendants now claim their new sentences are "vindictive" and therefore violate the Due Process Clause of the Federal Constitution. The appellants' basic claim rests upon *Pearce. North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *see also United States v. Pimienta–Redondo,* 874 F.2d 9 (1st Cir.) (en banc), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989). In *Pearce,* the Supreme Court held that, when an appellate court vacates a conviction and remands for a new trial, and the defendant is again convicted, the district court cannot (without special and objectively demonstrated reasons) impose a sentence that is more severe than its original sentence.

*Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081. The Due Process Clause forbids such a sentence, for otherwise the prospect of greater future punishment might chill the right to appeal. *Id.*

The appellants here argue that the district court, after our initial remand, improperly and unconstitutionally imposed sentences that are more severe than its original sentences—original sentences that included 100 years on the (reversed) civil rights count and lesser sentences on the other counts. They say that, prior to their initial appeal, their sentences for all *but* the civil rights count totalled 20 years imprisonment (20 years on Count II and shorter terms on the other counts to be served *concurrently*) plus a $50 special monetary assessment. After resentencing, their sentences on these same remaining counts totalled 50 years (20 years on Count II plus two terms of 10 years and two terms of 5 years on the other counts, all to be served *consecutively*) plus $30,000 in fines. Fifty years plus $30,000, they calculate, is "harsher" than 20 years plus $50. These "harsher" sentences, they conclude, show unconstitutional "vindictiveness," for they are not "based upon objective information concerning identifiable conduct ... occurring after the time of the original sentencing proceeding." *Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081.

The basic problem for the appellants is that the numbers they recite do not tell the whole story. They refer not to the entire sentence that the district court imposed the first time, but only to a portion of that sentence, a portion initially, and artificially, allocated to the "non-civil rights" counts. Once we examine the entire original sentence, we find that the second sentence was not longer, but shorter than the first; and we therefore have no reason to think that the second sentence is vindictive.

To understand our approach, the reader must keep in mind that judges, when calculating the length of a sentence (within statutory limits) have typically looked, not simply to the elements of the crime of conviction, but also to other aspects of a defendant's actual conduct including aspects that

did not comprise elements of the crime. Thus, judges normally have imposed longer sentences upon drug offenders who distribute, say, 100 kilograms of cocaine, than upon those who distribute, say, 20 kilograms, and they normally have imposed longer sentences upon bank robbers who injure bystanders than upon similar bank robbers who do not injure bystanders, whether or not the indictment specifically refers to the entire amount of cocaine distributed or to the injured bystanders. This system of sentencing is called "real offense" sentencing. The sentencing system before the Sentencing Guidelines took effect was, to a considerable degree, a "real offense" system. And, the Guidelines themselves, to a considerable extent, rest upon "real offense" considerations (although they channel and control the judge's power in this respect). *See* U.S.S.G. Ch. 1, Pt. A.4, intro. comment.

Once one understands this fact about sentencing, one can easily understand how one might find "vindictiveness" in the *Pearce* situation. A defendant is convicted of, say, a single burglary. The appeals court vacates the conviction and remands for a new trial. The defendant is again convicted of the same crime. This second time the court imposes a longer sentence than the first time. The second sentence appears "vindictive" because it seems like a longer sentence attached to approximately the same real behavior. *See Pearce*, 395 U.S. 711, 89 S.Ct. 2072.

One could also understand how a sentence might be vindictive in a second situation. Suppose a defendant is convicted of, say, two burglaries. The appeals court vacates the convictions and remands for a new trial. The defendant is again convicted but of only one burglary. This second time the court imposes the same sentence as (or a longer sentence than) the first time. The second sentence appears "vindictive" because it is attached to different, and significantly less culpable, real behavior.

The present case involves conduct similar to the first example. The "real conduct" that underlies the second sentence is approximately the same real conduct (or is as culpable as the real conduct) that underlay the first sentence. Yet, unlike the first example, the second sentence here is *shorter*, not longer, than the first sentence. Thus, we can find no presumption of "vindictiveness."

More specifically, it seems to us that the basic conduct upon which the defendants' sentences initially rested (as shown by the evidence produced at trial) consisted of seizing the courier, killing him, and taking his money. That conduct underlay the total sentences that the district court originally constructed after the initial civil rights and robbery (as well as the perjury and obstruction of justice) convictions. The statutes, and authoritative caselaw, *see McMillan v. Pennsylvania*, 477 U.S. 79, 92, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986), permitted the district court to take all that underlying conduct into account in setting the sentence (within statutory limits) for the civil rights crimes or for the robbery crimes, or for both, taken individually or together. In light of that conduct the district court, in the first proceeding, imposed a total sentence, not of 20 years, but of 120 years (100 years on Count I plus 20 consecutive years on Count II, the others concurrent). And, the court added, in a special order, that the defendants must serve 35 years before becoming eligible for parole. 18 U.S.C. § 4205(b)(1).

The second time, the district court imposed a sentence only in respect to the robbery, perjury and obstruction of justice crimes. But the record makes clear that its second sentence reflected the same basic conduct that underlay the original sentences for these crimes and for the civil rights counts. That is to say, the court intended its second sentence to reflect the manner in which the robbery was carried out, namely through abduction and murder. The law permitted the court to take this conduct into account in setting its second sentence. Our reversal of the civil rights count did not, in any way, suggest that the court could not, or should not, take account of any significant aspect of the defendants' basic underlying conduct. And, the new sentence that the district court imposed—

resting upon that same underlying behavior—amounted, not to 120 years with 35 years real imprisonment, but rather, to 50 years with 17 years real imprisonment (20 years on Count II, 10 years, 10 years, 5 years, and 5 years on the other counts, all consecutive) plus fines of $30,000. 18 U.S.C. § 4206(d). We do not see how this significantly less severe sentence, attaching to approximately the same real conduct, could raise any "presumption" of vindictiveness.

We can make the same point in a somewhat different way. In *Pimienta–Redondo*, we held that, when an appellate court vacates only some of a defendant's convictions under a multi-count indictment,

> common sense dictates that the judge should be free to review the efficacy of what remains in light of the original [sentencing] plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.

*Pimienta–Redondo*, 874 F.2d at 14 (citations omitted). The district court here made clear, after the remand, that it would resentence in accordance with his original sentencing plan—a plan designed to fix a high punishment in light of the horrific nature of the underlying conduct. The record indicates that the elements of actual conduct that the court took into account were the same in both instances. Nothing in our reversal made it inappropriate to consider any of these elements at the second proceeding. Hence, no presumption of "vindictiveness" arises. *Pimienta–Redondo*, 874 F.2d at 14.

■ Appellants point out that the court imposed no fine the first time, but it then imposed a $30,000 fine the second time. But, as we have said, (taking account of parole eligibility) "seventeen real years plus $30,000" is not somehow "harsher" than "thirty-five real years and no fine." Moreover, since defendants were in their mid–40's at the time of their original sentencing to a minimum of 35 real years, one can see why the court might have felt

a fine pointless. The court might have seen some point to a fine the second time, for the defendants could be released at a younger age.

■ Appellants add, in respect to the fine, that they are indigent. That matter, however, is for the district court to take into account. We cannot review, in that respect, a pre-Guideline sentence. *See United States v. Gomez–Pabon*, 911 F.2d 847, 862 (1st Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 801, 112 L.Ed.2d 862 (1991). Of course, an indigent defendant cannot be held in prison for failure to pay a fine, but we have no reason now to believe any such problem will occur. *See United States v. Levy*, 897 F.2d 596, 598 (1st Cir. 1990) (no standing to contest fine until expiration of sentence and exhaustion of administrative remedies).

■ Appellants make several additional arguments. First, they say the district court's restructuring of their sentences violated our mandate in *Maravilla*. That mandate said that the district court's judgment was

> [a]ffirmed in part and reversed in part, and the case is remanded to the district court for resentencing in accordance with this opinion.

*Maravilla*, 907 F.2d at 229 (emphasis original). The purpose of this language, in respect to resentencing, was to permit, not to forbid, the district court to restructure the sentence. *See Pimienta–Redondo*, 874 F.2d at 14; *United States v. Shue*, 825 F.2d 1111, 1113–14 (7th Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 351, 98 L.Ed.2d 376 (1987).

■ Second, the appellants claim that resentencing them violates the Double Jeopardy Clause of the Federal Constitution. As *Pimienta–Redondo* makes clear, they are wrong. 874 F.2d at 16. At the time of resentencing, they were still in prison serving a portion of their first sentences. They were not entitled to release. *See* 18 U.S.C. § 4206(d); *see also Tuitt v. Fair*, 822 F.2d 166 (1st Cir.), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). And, for reasons set forth in *Pimienta–Redon-*

*do*, the Double Jeopardy Clause does not forbid resentencing.

 Third, appellants argue that the court, in resentencing, should not have considered the "victim impact" statement of the dead man's wife or the details of the murder. The district court, however, has wide power to consider information relevant to the circumstances of both crime and criminal. *See McMillan*, 477 U.S. at 92, 106 S.Ct. at 2419; *see also United States v. Restrepo*, 946 F.2d 654, 655 (9th Cir.1991) (en banc) (citing *McMillan*, 477 U.S. at 91, 106 S.Ct. at 2418); *United States v. Stevenson*, 942 F.2d 1111, 1116 (7th Cir.1991) (citing *United States v. White*, 888 F.2d 490 (7th Cir.1989)); *United States v. Richard*, 943 F.2d 115, 120 (1st Cir.1991) (citing *United States v. Berzon*, 941 F.2d 8, 21 (1st Cir.1991)); *cf.* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider *for the purpose of imposing an appropriate sentence.*"). Congress enacted the Victim and Witness Protection Act of 1982—requiring a court to consider victim impact information—*after* the appellants committed the crime in question. But, that fact is irrelevant. Prior law did not *prohibit* the court from considering such a statement. *See United States v. Serhant*, 740 F.2d 548, 552 (7th Cir.1984); *cf. United States v. Bruckman*, 874 F.2d 57, 63 (1st Cir.1989).

Finally, appellants argue that the district court should have attached to the Pre–Sentence Report a statement that one of their counsel had objected to a probation officer's definition of the particular (pre-Guideline) Parole Commission offense category applicable to the case. (The court had replied that it would not "consider it ... because ... that's addressed to the parole commission.") The Rule to which appellants point, however, does not require a court to attach a record of any such statement to a Pre–Sentence Report. Fed. R.Crim.P. 32(c)(3)(D). That Rule requires a court to attach reports of how the court dealt with a defendant's allegations of *fac-*

*tual* inaccuracies in the Pre–Sentence Report. But, the matter at issue here was a legal, not a factual, matter. Hence, it falls outside the Rule.

For these reasons the judgment of the district court is

*Affirmed.*