991 F.2d 786
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Adan SALAZAR, Plaintiff, Appellant,
v.
UNITED STATES of America, Defendant, Appellee.
 No. 93-1207.
 United States Court of Appeals,
First Circuit.
 April 7, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND
 Adan Salazar on brief pro se.
 D.R.I.
 AFFIRMED.
 Before Torruella, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Adan Salazar appeals the district court's denial of his request to vacate or provide for installment payments of a stand committed fine imposed on him in 1987 after he pled guilty to conspiring to distribute cocaine and possessing with intent to distribute cocaine. We affirm.
 
 
 2
 In a letter, Salazar asked the district court to vacate his committed fine, or to permit its payment in installments while he was on parole. He asked for relief from the fine because he had been scheduled to be released on parole, but his parole had been made contingent on the fine being paid or "otherwise disposed of by law." Salazar told the court that, given his earning power while incarcerated, he could not pay the fine. Given his allegedly poor health, he also suggested that the fine "flirt[ed] on the rim of the Eighth Amendment ban on Cruel or Unusual Punishment."
 
 
 3
 The district court treated Salazar's letter as a motion to correct a sentence under Fed. R. Crim. P. 35 and denied it as untimely. The version of Rule 35 applicable to Salazar, whose offenses were committed in 1984, provided that a court could correct an "illegal sentence" at any time, but that it could correct a sentence "imposed in an illegal manner" only within 120 days after the date of sentencing or within 120 days after the date of the last appellate disposition upholding the judgment of conviction. The court found that Salazar's fine was not an illegal sentence since it was not "ambiguous, contradictory, incomplete, uncertain, or unauthorized", nor was it "in excess of the statutory maximum allowable for the charges [or] in conflict with any applicable law." Given Salazar's allegation that "proper consideration [had] not [been] given to his ability to pay the fine," the court concluded that Salazar was challenging the manner in which his sentence had been imposed. Because his challenge had not been brought within the requisite 120 days, it denied his request for relief.
 
 
 4
 In its decision, the district court determined a purely legal question-whether the fine was an "illegal sentence" which could be corrected at any time under Rule 35(a). Given Salazar's argument to the court that presently he could not pay the fine and the court's position that the fine had been within the statutory maximum and not contrary to other law when imposed, we interpret the court's opinion to signify that a fine, which was legal when imposed, does not become illegal simply because the defendant cannot pay the fine when it comes due. The only case on point which we have found supports the court's conclusion. In United States v. Blanton, 739 F.2d 209 (6th Cir. 1984), the Sixth Circuit considered whether a district court could vacate a fine as an "illegal sentence" where the defendant had the means to pay the fine at the time it was imposed, but did not at the time the fine was due. It found that the defendant's subsequent inability to pay the fine would not render the fine an illegal sentence for Rule 35 purposes since, when imposed, the fine had been authorized by "the judgment of conviction."[1] Id. at 211-12.
 
 
 5
 Although the district court's decision has support in precedent, we would not confine the analysis to Rule 35. We think that Salazar's request could also have been treated as a 28 U.S.C. § 2255 motion, which is not subject to Rule 35's time limitations. See, e.g., United States v. Santora, 711 F.2d 41, 42 (5th Cir. 1983) ("[m]indful of the liberality accorded pro se filings, we ... construe [defendant's] ill-styled Rule 35 pleading as a request for relief under § 2255"). Accordingly, we proceed to resolve the merits of Salazar's claim.
 
 
 6
 Salazar seems most concerned with the committed nature of his fine in light of his impending parole. To the extent he believes that he will remain in prison until the fine is paid, and that he will never obtain release because his earning power in prison is too low to permit him to pay the fine in his lifetime, he need not worry. Upon showing that he is indigent, he may obtain his discharge even if he has not paid his fine. See 28 U.S.C. § 3569, supra footnote 1.
 
 
 7
 Salazar also appears to be alleging that the committed portion of the fine was illegal at the time the fine was imposed because he could not pay the fine at that time. As a general matter, courts have long been regarded as having the authority to impose committed fines. See United States v. Estrada de Castillo, 549 F.2d 583, 585 (9th Cir. 1976) (Hufstedler, J., concurring specially). The only qualification was that a prisoner could not be confined for not paying a fine if it was his indigence alone that prevented him from paying the fine. See Tate v. Short, 401 U.S. 395, 397-98 (1971) (equal protection violation to confine a person solely because he did not have the means to pay a fine); Williams v. Illinois, 399 U.S. 235, 240-41, 244 (1970) (equal protection violation to extend a person's prison term solely because indigency made it impossible for the person to pay a fine). Because defendants sentenced both to a prison term and a committed fine could obtain a discharge of the committed portion of the fine under 28 U.S.C. § 3569 when their prison term ended, they have been found to have no standing to challenge the committed portion of the fine on the basis of alleged indigence as of the time the fine was imposed. See, e.g., United States v. Levy, 897 F.2d 597, 598 (1st Cir. 1989) (so holding and citing similar cases from other circuits). Thus, Salazar's alleged indigency at the time of sentencing provides no basis under the Constitution for challenging his committed fine.
 
 
 8
 Nor was the district court required by statute to consider Salazar's ability to pay the fine at sentencing. Salazar's offenses were committed before December 31, 1984. At that time, 18 U.S.C. § 3565, relating to the collection and payment of fines and penalties, did not require a sentencing court to consider ability to pay in imposing a fine. The Criminal Fine Enforcement Act of 1984 amended section 3565 to permit the imposition of committed fines only if the court found "by a preponderance of the information relied upon in imposing sentence that the defendant has the present ability to pay a fine or penalty." See 18 U.S.C. § 3565(a)(1) (now repealed). But it applied only to offenses committed after December 31, 1984. See Publ. L. 98-596, § 10, 98 Stat. 3134, 3138. Likewise, 18 U.S.C. § 3622 (now repealed), which specifically required a sentencing court to consider a defendant's "income, earning capacity, and financial resources" before imposing a fine, applied only to offenses committed after December 31, 1984. Id. Under the law applicable to Salazar, therefore, the district court had no statutory obligation to consider Salazar's ability to pay. See United States v. Wilfred American Educational Corp., 953 F.2d 717, 719 & n.1 (1st Cir. 1992) (summarily dismissing a corporation's claim that imposition of the maximum statutory fine was invalid under 18 U.S.C. § 3622(a) because the sentencing court had not considered its ability to pay the fine since the conduct for which the fine had been imposed had occurred before December 31, 1984).
 
 
 9
 Indeed, before the Criminal Fine Enforcement Act (and thereafter the Sentencing Guidelines) became effective, a district court had very broad discretion in imposing sentences as long as they were within the statutory maximum, and sentences within the statutory maximum were virtually unreviewable on appeal. See H.R. Rep. No. 906, 98th Cong., 2d Sess., 1984 U.S.C.C.A.N 5433 passim (commenting on the changes the Criminal Fine Enforcement Act would make in a sentencing judge's discretion, particularly respecting a defendant's ability to pay); United States v. Dominguez, 951 F.2d 412, 416 (1st Cir. 1991) (on appeal, appellants challenged a fine which was within the statutory maximum, claiming that they were indigent; this court stated that "[t]hat matter ... is for the district court to take into account. We cannot review, in that respect, a pre-Guidelines sentence."), cert. denied, 112 S. Ct. 1960 (1992); United States v. Gomez-Pabon, 911 F.2d 847, 862 (1st Cir. 1990) ("In a pre-Guidelines case, the sentencing judge has very broad discretion in determining the appropriate punishment in a particular situation.... An appellate court will ordinarily not review a sentence unless it exceeds statutory limits or 'is so disproportionate to the offense for which it was imposed that it constitutes cruel and unusual punishment.' ") (citations omitted), cert. denied, 111 S. Ct. 801 (1991). Our pre-Guidelines cases recognized only a "narrow exception" to this general rule. We would overturn a sentence if the sentencing court had taken "a rigid, mechanistic approach" to sentencing, and had not considered "the individual mitigating circumstances" of the defendant. United States v. Bernal, 884 F.2d 1518, 1520 (1st Cir. 1989) (citation omitted). The presentence report indicates that Salazar's fine of $100,000 was well within the applicable statutory maximum ($250,000). Accordingly, even if Salazar had been indigent at the time he was sentenced, this court would have no basis for reviewing or overturning his fine unless the court had sentenced him in a "rigid, mechanistic" fashion. The record before us gives us no reason to think that the sentencing court imposed Salazar's fine without considering his individual circumstances.
 
 
 10
 Salazar pled guilty to cocaine charges, and the government recommended the maximum term of twenty years in prison and the maximum fine of $250,000. The plea agreement was non-binding and gave Salazar the right to argue for a lesser sentence. He appears to have done so. His submissions to this court include a letter written by him which is dated January 21, 1987, the date he was sentenced. In the letter, Salazar told the court that he did not own a house or other property and that the value of his possessions was less than $10,000. Salazar's presentence report indicated that a year or two before sentencing Salazar had received $40,000 for selling a house which he had owned for ten years. The presentence report confirmed that Salazar's known assets were under $10,000. It reported that Salazar had been employed regularly before his arrest and that he had indicated that he earned $7/hour when employed. It further noted that drug records showing sales of over $1 million were found in an apartment which Salazar had lived in shortly before his co-defendants were arrested and which Salazar had vacated shortly thereafter, although the records were not in Salazar's handwriting. At sentencing, the district court imposed a fine of $100,000, less than half the $250,000 permitted by the statute and recommended by the government. According to Salazar, the district court chose that amount because Salazar's co-defendants had stated that they had paid him $100,000 for cocaine in 1984.
 
 
 11
 From the above, it appears that the court did take into account the particular facts relating to Salazar's situation. It did not impose the maximum fine, but imposed a fine reflecting the amount of Salazar's illegal proceeds. Although, obviously, money received by Salazar in 1984 might well have no longer been in his possession as of 1987 when he was sentenced, he had also received $40,000 in 1985 or 1986 for the sale of his house and he appeared to be able to obtain employment on a regular basis. In addition, the court reasonably might have believed that the drug records showing sales in excess of $1 million found in an apartment recently occupied by Salazar, though not in Salazar's handwriting, reflected Salazar's cocaine receipts.
 
 
 12
 In light of the above, it is clear that Salazar's fine did not violate the Eighth Amendment prohibition against cruel and unusual punishment. See United States v. Pilgrim Market Corporation, 944 F.2d 14, 22 (1st Cir. 1991) (a fine of less than one-half the statutory maximum and one-half the government's recommended fine was not excessive under the Eighth Amendment); United States v. Bernal, 884 F.2d 1518, 1520-21 (1st Cir. 1989) (a 30-year prison sentence imposed on a 62-year old defendant was not cruel and unusual punishment because it was within the statutory maximum established by the legislature as appropriate punishment for the offense); United States v. Dixon, 538 F.2d 812, 814 (9th Cir.) (imposing a committed fine was not cruel and unusual punishment), cert. denied, 429 U.S. 959 (1976).
 
 
 13
 The judgment of the district court is affirmed.
 
 
 
 [1]
 In Blanton, the district court had determined that the fine was an "illegal sentence" which could be corrected at any time under Rule 35(a). Once the defendant had lost the means to pay the fine, the court reasoned, it became illegal under Supreme Court law forbidding the incarceration of persons solely because they could not pay their committed fine. But the Sixth Circuit noted that that law was inapplicable since the defendant was not actually incarcerated. Although Salazar is presently incarcerated, the reasoning in the Blanton case applies nonetheless because Salazar will not remain incarcerated if he cannot pay the fine. If shown to be indigent, Salazar will be released from prison. See 28 U.S.C. § 3569 (a prisoner may obtain his discharge without paying his committed fine by showing that he is an indigent and by taking an oath to that effect). Thus, Salazar's position is essentially the same as that of the defendant in Blanton