UNITED STATES of America, Appellee,

v.

**Harold L. DOLLOPH, Defendant, Appellant.**

No. 95–1059.

United States Court of Appeals, First Circuit.

Heard Oct. 3, 1995.

Decided Feb. 1, 1996.

---

Thomas A. Zonay, by Appointment of the Court, with whom Carroll, George & Pratt, was on briefs, Rutland, VT, for appellant.

Peter E. Papps, First Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief, for the United States.

_____

* Of the District of Massachusetts, sitting by desig-

Before BOUDIN, Circuit Judge, BOWNES, Senior Circuit Judge, and KEETON,* District Judge.

BOUDIN, Circuit Judge.

On July 21, 1994, Harold Dolloph pled guilty to one count of possessing child pornography, four counts of transporting minors for purposes of engaging in sexual activity, and one count of possessing a prohibited firearm. 18 U.S.C. §§ 2252(a)(4)(B), 2423; 26 U.S.C. § 5861. At the sentencing hearing on December 19, 1994, the district judge departed upward two levels from the applicable guideline range of 168 to 210 months and sentenced Dolloph to 240 months imprisonment. Dolloph now appeals from his sentence, raising several different issues.

The facts, which we briefly summarize, are taken from the presentence report, sentencing hearing transcript, and submissions at sentencing. *United States v. Egemonye*, 62 F.3d 425, 426 (1st Cir.1995). At various times prior to September 1993, Dolloph's four great-nieces—all children of the same mother—stayed at Dolloph's home in Swanzey, New Hampshire. In that month, their mother told her children that they would be staying with Dolloph again while she moved their household to a new residence. At that point two of her daughters, aged eight ("TL8") and eleven ("TL11"), said that Dolloph had sexually abused them on their prior visits.

Dolloph was then indicted by a federal grand jury. The two girls, TL8 and TL11, told the police that while staying with Dolloph in July 1993 he had engaged in sexual activity with them; the activity they described potentially amounted to statutory rape, involved a variety of other practices commonly described as unnatural or degrading, and included the taking of lascivious photographs of the girls by Dolloph as well as some of TL11 in handcuffs. As described by the girls, the conduct had occurred in various forms on several different occasions.

Based on these reports and some corroborating evidence, the police obtained a search

nation.

warrant and searched Dolloph's apartment. What they found included sexually explicit photographs of TL8 and TL11, video tape showing Dolloph in a sexual encounter with TL8, and other tape and photographs indicating that Dolloph had abused other young girls. Dolloph was arrested. When questioned, he denied ever having had sexual relations with his two nieces but he admitted to lesser acts of abuse. The latter were, in any event, documented by photos and video tape.

Dolloph was then indicted by a federal grand jury. In the superseding indictment returned on January 20, 1994, Dolloph was charged in 11 counts; 10 related to misconduct involving the children and the last charged Dolloph with unlawful possession of a sawed-off shotgun that the police had found in their search of his apartment. After a psychiatric examination found Dolloph competent to stand trial, he pled guilty, on July 21, 1994, to the six counts described above, five relating to the children and one to the weapon.

At a sentencing hearing on December 19, 1994, the government presented a psychologist, Dr. Margaret Ward, who testified that TL8 had suffered psychological damage "more severely than most children that I have seen that have experienced the nature and duration of what she experienced." Dr. Ward said that this might well also be true of TL11. Ultimately, the court calculated the offense level as 35 and departed upward by two levels to level 37. The court sentenced Dolloph to 240 months, somewhat above the midpoint for level 37.

1. On this appeal, Dolloph's main attacks are upon this upward departure. The presentence report identified as a potential ground of departure U.S.S.G. § 5K2.3, which permits a court to depart upward "[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense...." The government did not urge any other basis for a departure prior to the hearing, and its expert witness—Dr. Ward—testified in accord with section 5K2.3.

*Burns v. United States*, 501 U.S. 129, 138–39, 111 S.Ct. 2182, 2187–88, 115 L.Ed.2d 123

(1991), says that the defendant must be given advance notice if the district judge proposes to depart on any ground not identified in the presentence report or by a government submission filed in advance of the hearing. Here, says Dolloph, the district court violated this precept by relying, in addition to psychological damage, upon other grounds for departure not identified in advance. The argument has some force but we think not quite enough.

That the departure rested *primarily* upon the damage to the two girls is patent. We construe *de novo* the district court's remarks at the sentencing hearing and his two page written "departure explanation." Both stress, in organization and emphasis, the court's finding that TL8 had suffered "severe psychological injury of a nature beyond the norm"; and the written explanation contains an explicit finding, by a preponderance of the evidence, that TL11 suffered in the same way. The district judge said that the sentence "should reflect the nature of the injury that [Dolloph] inflicted on these girls." Section 5K2.3 was cited in the written explanation.

But—Dolloph points out—both at the hearing and in the written explanation, the district court referred to the particularly insulting and degrading sexual activity and the fact that Dolloph had abused a relationship of trust that he himself had cultivated. The judge also cited to U.S.S.G. § 5K2.1; other record evidence indicates that the intent was to refer instead to section 5K2.0, which is the catch-all departure provision allowing departures for factors "of a kind, or to a degree, not adequately" accounted for in the guidelines. *Id.* (quoting 18 U.S.C. § 3553(b)).

The unusually degrading nature of the conduct could be an independent basis for departure under U.S.S.G. § 5K2.8, although no advance notice of this ground was provided. Dolloph's relationship to the victims was considered in fixing the offense levels, *id.* §§ 2A3.1(b)(3), 2G2.1(b)(2), so his betrayal of the relationship might or might not be an independent basis, depending on whether it was present "to a degree substantially in excess of that which ordinarily is involved in

the offense." *Id.* § 5K2.0. And, in any event, *Burns'* requirement of advance notice was apparently not met in either case.

It is unlikely that the references to egregious behavior and breach of trust were intended by the trial judge as *independent* grounds for the departure. In the written explanation, the judge spoke of the egregious conduct as already described, and he followed it immediately by saying that the victims, particularly the younger, suffered and would likely continue to suffer well into the future. In other words, the court was focusing on the conduct to explain the extent of the damage it inflicted. *See, e.g., United States v. Anderson,* 5 F.3d 795, 805 (5th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1118, 127 L.Ed.2d 428 (1994).

Dr. Ward also related the damage suffered by TL8 to the nature of Dolloph's behavior ("in the more severe part of the continuum") and to his family relationship; as to the latter relationship, Dr. Ward said that TL8's connection with the defendant "allowed her to fear the loss of [their] relationship." The suggestion may be that the betrayal of trust enhanced the damage. Again, the district court's written discussion of the fiduciary breach occurs in the middle of an extensive discussion of the causes and evidence of severe damage.

Finally, it was the prosecutor who suggested a departure on account of damage to the victims, citing both guideline sections (5K2.0 and 5K2.3). Thus, the court's reference to the earlier section is easily explained. And the district court's discussion of departure, from which isolated remarks have been quoted, overlapped with the court's broader explanation of why it was choosing the particular sentence within the finally selected guideline range.

■ Faced with uncertainty, we have sometimes remanded or at least asked the district court to clarify its sentencing rationale. *United States v. Quinones,* 26 F.3d 213, 219–20 (1st Cir.1994). In deciding whether to remand or inquire, the degree of uncertainty is the main element, but other factors sometimes play a silent role: the extent of the departure, objective ambiguity in the transcript, the nature of the possible mistake, and a realistic appraisal of whether a different outcome on remand is possible.

Here, there is no realistic possibility of a different result on remand. Dr. Ward's testimony, coupled with other evidence, amply supported the departure based on damage alone, and damage was certainly the district court's principal theme. If the disputed references to degrading conduct and betrayal were struck, we have no doubt whatever that the district court would impose the same two level enhancement—and 30 additional months—as before. If error occurred, and we doubt it did, it was assuredly harmless. *See United States v. Ortiz,* 23 F.3d 21, 28 (1994).

■ There is no merit to Dolloph's other attacks on the departure. Dr. Ward admitted that she had not interviewed the children but had worked from interview transcripts and other records; and she did not provide a detailed description of what would constitute only "normal" damage. But these matters went to the weight of the evidence. Dr. Ward was qualified, subjected to cross-examination, and supported in various respects by other evidence including one of Dolloph's own videotapes, the presentence report, victim impact statements, and medical information.

■ Dolloph also complains that as to TL11, Dr. Ward herself was unable to say, "to a reasonable degree of medical certainty," that the harm was abnormally severe; she said there was a "reasonable . . . indication" to that effect. However, the district court itself made a finding of abnormal damage under the preponderance standard. Given the evidence available here, the defendant's conduct and the damage ascribed to the children were within a layperson's ken. Under the clear error standard, the court's finding is easily sustained. *United States v. Joyce,* 70 F.3d 679, 681–82 (1st Cir.1995).

2. We turn now to the remaining challenges to the sentence, starting with Dolloph's two main objections. They derive from the intent of the guidelines in certain respects to sentence the defendant for the "real" conduct underlying the offense. *Unit-*

*ed States v. Dominguez,* 951 F.2d 412, 415 (1st Cir.1991), *cert. denied,* 504 U.S. 917, 112 S.Ct. 1960, 118 L.Ed.2d 562 (1992). This is done partly by cross-references that—on proof of aggravating facts—cause a defendant convicted of a crime to be sentenced under the more severe guideline pertaining to the aggravating conduct.

In our case, the guidelines governing both of the sexual offenses to which Dolloph pled—possession of pornography and transportation of a minor—have base offense levels of "only" 13 and 16, respectively. U.S.S.G. §§ 2G2.4, 2G1.2. Yet, each contains a cross-reference that makes applicable a considerably higher base offense level of 25, under U.S.S.G. § 2G2.1, if the offense conduct included "causing [or] transporting ... a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct...."

The presentence report found or indicated that as to three of the counts Dolloph had caused the girls to engage in such conduct (count 6) or transported them for that purpose (counts 7 and 9), and the district court adopted the findings. Dolloph contests this determination, arguing that the evidence did not show that he invited the nieces to his home for the purpose of photographing them; the photographs, he says, showed that "the photographs were taken as a 'mere incident' of the trips." This claim is not supported by any detailed factual argument.

Without a discussion by Dolloph of the pertinent evidence, it is difficult to consider his contention. Photographs, interview transcripts, and video tape evidence were presented or available at the hearing, and the litigants understood which child was involved in the various counts and photographs and how the evidence related to each count and sub-count (count six required several different photographs). Very little of what the parties understood about specific events can be easily reconstructed from the hearing transcript itself.

There is some indication that Dolloph's argument rests at least in part on a misconception. Both at the hearing and in his appeals brief, Dolloph's counsel relied primarily upon language from *United States v.*

*Ellis,* 935 F.2d 385 (1st Cir.), *cert. denied,* 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991). There, the trial court had instructed the jury that to violate the transportation statute, having the child engage in sexual activity must have been one of the purposes of the trip and "not a mere incident of the trip." *Id.* at 389. This court upheld the charge, rejecting a claim that the illicit purpose must be the "dominant" one. *Id.* at 390.

Four of the cross-reference findings (pertaining to count 6) involved "causing"—not transporting—so the *Ellis* language is irrelevant. The other two (counts 7 and 9) apparently did rely on transporting; but since Dolloph tells us little about the specific events, we have no basis for concluding that the district court erred in accepting the presentence report. How much weight should be given to the presentence report is sometimes a matter of dispute; but in this instance we have been given nothing to set against its findings. *See United States v. Gonzalez–Vazquez,* 34 F.3d 19, 25 (1st Cir. 1994).

Dolloph's second objection relates to a different cross-reference. As to the other two counts involving transporting a minor (counts 8 and 10), specifically TL8, the probation report found, and the district court adopted the finding, that Dolloph's conduct on those visits had involved "criminal sexual abuse." A cross-reference in the transportation guideline, U.S.S.G. § 2G1.2(c)(2), provides that in such a case the sexual abuse guideline governs, and that guideline provides a base offense level of 27. *Id.* § 2A3.1. Broadly speaking, this latter guideline applies to conduct violating 18 U.S.C. §§ 2241–42. U.S.S.G. § 2A3.1, comment. (stat. provs.).

The cited code sections govern "sexual act[s]," as defined by 18 U.S.C. § 2245, which are made unlawful in specified situations, of which the one most pertinent here forbids sexual relations with children under twelve. 18 U.S.C. § 2241(c). As Dolloph points out, the sexual abuse chapter itself, *id.* §§ 2241–45, is confined to conduct occurring in "the special maritime and territorial jurisdiction of the United States or in a Federal prison." *E.g.,* 18 U.S.C. § 2241(a). Because no such

federal jurisdiction is asserted in this case, Dolloph objects to the use of the cross-referenced guideline.

The argument is interesting but hopeless. Whatever the offense plea, the defendant is ordinarily subject to punishment for all "relevant conduct," including all acts and omissions "that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1). Here, Dolloph does not contest the principle. His present argument is that—even assuming that his treatment of TL8 amounted to sexual abuse as defined by the federal statutes—those statutes include a jurisdictional element not here satisfied. Therefore, he concludes, the cross-reference is not pertinent.

■ But the sexual abuse guideline is concerned with identifying the proper penalty for the underlying sexual conduct, here, the mistreatment of TL8. It is the plain intent of the guidelines—specifically, the cross-reference section that takes us to the sexual abuse guideline—to punish Dolloph for that conduct. So long as the guidelines so intend and the necessary proof is offered, a defendant may ordinarily be punished for relevant conduct, whether or not it includes conduct for which the court lacks independent jurisdiction to try the defendant. *United States v. Carroll,* 3 F.3d 98, 102–03 (4th Cir.1993); *United States v. Pollard,* 986 F.2d 44, 47 (3d Cir.), *cert. denied,* 508 U.S. 956, 113 S.Ct. 2457, 124 L.Ed.2d 671 (1993).

Finally, Dolloph argues that the evidence did not justify the district court finding that sexual acts were performed against TL8. If one credits the statements of the child, as the district court evidently did, there is no doubt that Dolloph's conduct violated the sexual abuse statutes, the jurisdictional element to one side. Dolloph demurs but a comparison of what TL8 said happened with what the statute forbids resolves the matter against him.

*Affirmed.*