In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3349

United States of America,

Plaintiff-Appellee,

v.

Ralph Wayne Angle,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:98 CR 37 RL--Rudy Lozano, Judge.


Argued May 11, 2000--Decided December 6, 2000



Before Coffey, Evans, and Williams, Circuit Judges.

Williams, Circuit Judge. Following a four-day bench trial, Defendant Ralph Angle was convicted of several crimes relating to his interest in child pornography and his pursuit of a minor for sexual gratification. Through a combination of sentencing enhancements and an upward departure from the applicable guideline range, the district court sentenced Angle to just over 27 years' imprisonment. Angle challenges his convictions and sentence on a variety of grounds. For the reasons stated below, we affirm Angle's convictions but remand for resentencing.

I

After investigating his children's use of the Internet, Ted Gross, a Colorado resident, contacted the Federal Bureau of Investigation (FBI) and reported several computer screen names of individuals using the Internet to engage in sexually-explicit conversations with children. At the time Gross contacted the FBI, in August 1997, the agency was conducting its own nationwide investigation against individuals who used the Internet to lure children into sexual relationships. As part of its investigation, the FBI traced one of the reported computer screen names, "Butch 8003," to Angle, who resided in Indiana. The FBI then decided to enhance the

computer identity, "Jeff/Wolf One," belonging to the Gross children./1 During on-line conversations, an undercover agent indicated that Jeff/Wolf One was from a troubled home situation and that he had been forced to relocate with his father. Angle, using his computer screen name Butch 8003, continued to correspond with Jeff/Wolf One. Besides having a number of sexually-explicit conversations with Jeff/Wolf One, Angle repeatedly told Jeff/Wolf One that he loved him and that he was willing to visit Jeff/Wolf One in Colorado. Angle also asked Jeff/Wolf One for his telephone number and offered to send Jeff/Wolf One a birthday gift or money if he would provide Angle with his address.

On November 6, 1997, Angle called a telephone number provided by the FBI and spoke to an undercover agent posing as Jeff/Wolf One. During the telephone conversation, Angle told Jeff/Wolf One that he wanted to buy Jeff/Wolf One a camera so that Jeff/Wolf One could take pictures of himself to send to Angle. Angle also told Jeff/Wolf One that he was willing to visit Colorado to take Jeff/Wolf One shopping. In addition, Angle made several attempts to obtain Jeff/Wolf One's address by telling Jeff/Wolf One that he wanted to send him a birthday gift; Angle believed that Jeff/Wolf One had recently celebrated his fourteenth birthday.

Around this time, Angle, in addition to expressing interest in Jeff/Wolf One, desired to supplement his collection of child pornography. On November 7, 1997, federal government investigators sent electronic mail ("e-mail") messages to Angle and other customers of Jake's Photo Service and/or Metro Comp Services, a child pornography distributor based in Denver, Colorado,/2 advising them that the business had resumed operations and was willing to send interested customers an updated video list./3 Responding to Angle's request, government investigators sent via e-mail an updated video list including graphic descriptions of the sexual activity depicted in each video, as well as the age and sex of the children. In December 1997, Angle sent an e-mail message to Jake's Photo Service indicating that he wanted to purchase five videotapes and that his order was forthcoming.

On January 7, 1998, Angle mailed a money order payable to Jake's Photo Service in the amount of $161. Three days later, he sent an e-mail message to Jake's Photo Service confirming that the money order was payment for five videotapes, which he identified by title; all the titles were advertised as depicting children under the age of 17 engaging in graphic sexual activity. In the

confirmatory e-mail, Angle requested that his order not be shipped until January 23, 1998, because he planned to be in Mexico for eight days to "play with the boys." In a follow-up e-mail sent to Jake's Photo Service on January 14, 1998, Angle reiterated that he planned to visit Mexico and boasted about "[h]av[ing] boys lined up . . . and waiting for [his] arrival."

On January 26, 1998, as he attempted to re-enter the United States from Mexico, the United States Customs Service stopped Angle and searched his luggage. The Customs agents found a video camcorder and three undeclared videotape cassettes in Angle's luggage. Angle allowed the Customs agents to view the videotape cassettes, at least one of which appeared to contain images of child pornography. The next day, Angle sent an e-mail message to Jake's Photo Service, stating "do not ship that order. More latter [sic]." A few days later, on February 3, 1998, federal and local law enforcement officers executed a search warrant at Angle's residence seeking child pornography in various forms. The officers found a child pornography videotape titled "Jap Boys/Mexican Boys," hidden in the basement ceiling, which depicted children between the ages of 10 and 15. The officers also found a large quantity of computer related items such as diskettes, zip disks, and a computer monitor.

On February 26, 1998, Angle was arrested. The grand jury later returned a superseding indictment charging Angle with attempted receipt of child pornography, in violation of 18 U.S.C. sec. 2252(a)(2) (Count I),/4 possession of child pornography, in violation of 18 U.S.C. sec. 2252(a)(4)(B) (Count II),/5 and attempted solicitation of a minor, via the Internet and telephone, to engage in sexually prohibited activity, in violation of 18 U.S.C. sec. 2422(b) (Count III)./6 While initially pleading not guilty to the charges, Angle later filed a motion to enter into a plea bargain, which he subsequently withdrew. Angle then brought a motion to suppress evidence obtained from the search of his residence, which the district court denied. The court also made certain evidentiary rulings in favor of the government relating to the admissibility of Angle's prior convictions and his uncharged possession of child pornography on January 26, 1998. The case then proceeded to trial.

In support of its case on Counts I and II, the government offered evidence that Angle had ordered child pornography videotapes from Jake's Photo Service. The government also introduced into evidence the videotape cassette, computer diskettes, and zip disks confiscated from Angle's

residence. While the videotape cassette obtained during the search undeniably contained child pornography, the government called Thomas McDonnell, an information technology specialist with the United States Postal Inspection Service, to testify about pornography that had been erased or deleted from the confiscated computer diskettes and zip disks.

McDonnell testified that since the confiscated diskettes and zip disks had not been reformatted, the deleted pornography files contained on them were still recoverable. McDonnell explained that when information is deleted from a diskette (or zip disk) the computer operating system does not actually erase the information until it is overwritten by new information. McDonnell stated that deleted information can often be recovered by using a computer utilities program, such as Norton Utilities, which is commonly available at computer software stores. Using the Norton Utilities program, McDonnell demonstrated how the deleted pornography files were capable of being recovered on the confiscated diskettes.

The government introduced into evidence at least fourteen separate diskettes (each diskette holding multiple pornographic images) that were found to contain recoverable child pornography files. The government also introduced hard copy images from the computer files recorded on each diskette. The government further introduced into evidence a report prepared by McDonnell which identified, among other things, computer files containing visual depictions of minor children engaging in graphic sexual behavior recovered on the confiscated diskettes./7 Neither the videotape cassette nor the computer diskettes confiscated from Angle's residence were manufactured in the State of Indiana, and the zip disks were assembled in Taiwan.

Finally, Dr. Phillip Merk, a pediatrician, reviewed the videotape cassette, computer diskettes, and zip disks confiscated from Angle's residence and noted that minor children were depicted on all those items.

With respect to Count III,/8 the government introduced into evidence records of various conversations Angle had with Jeff/Wolf One (i.e., Richard M. Potocek, the undercover FBI agent posing as Jeff/Wolf One) over the Internet and telephone. Angle had a number of sexually-explicit conversations with Jeff/Wolf One. In light of those conversations, the government argued that Angle had attempted to cultivate a sexual relationship with Jeff/Wolf One (e.g., by expressing affection for Jeff/Wolf One and enticing him with gifts and money). The

government also called Potocek to testify about his experience in investigating child sexual predators and to explain his role in the investigation against Angle. Potocek testified that child sexual predators typically target children who are lonely and disconnected from a normal social life. He stated that it was not uncommon for a predator to obtain a child's address and simply appear at the address without warning. Potocek testified that, in his view, Angle was a serious threat to children.

Angle testified in his own defense at trial. He admitted that following his return from Mexico in late January 1998, he took various items (e.g., videotape cassettes and zip disks) containing child pornography to friends for safekeeping. Angle admitted that the confiscated diskettes and zip disks once contained child pornography, but that he had deleted the pornography files months before the search. He testified that he had no knowledge about how to recover the deleted files on the confiscated diskettes and zip disks. Angle further stated that he never had any intention of traveling to Colorado to meet Jeff/Wolf One and that his conversations with Jeff/Wolf One were merely "fantasy." On cross-examination, Angle admitted that he had prior convictions for child molestation and sodomy.

After weighing the evidence, the district court found Angle guilty of all charges brought in the superseding indictment. The court sentenced Angle to concurrent prison terms of 325 months on Count I and 120 months on Counts II and III, followed by a five-year term of supervised release on Count I which was to run concurrent to a three-year term of supervised release on Counts II and III of the superseding indictment. As a special condition of his supervised release, the court imposed a sex offender registration requirement. The court also imposed $5,000 in fines.

In making its sentencing determination, the district court applied a variety of enhancements to Angle's base offense level under the sentencing guidelines. The court applied a cross-reference to U.S.S.G. sec. 2A3.1, the sexual abuse guideline, resulting in a base offense level of twenty-seven for Count III, see U.S.S.G. sec. 2G1.1(c)(2)./9 Because the victim was under sixteen years of age, the court added a two-level enhancement in offense level for Count III, pursuant to U.S.S.G. sec. 2A3.1(b)(2)(B). The court also departed upward from the applicable guideline range of 151 to 188 months pursuant to U.S.S.G. sec. 4A1.3, because Angle's criminal history category did not accurately reflect the seriousness of his past criminal conduct or the likelihood that he would commit other crimes. As

a result, the court sentenced Angle to 325 months' imprisonment.

On appeal, Angle argues that the district court erred in denying his suppression motion and his motion for a judgment of acquittal on Count II (possession of child pornography). With respect to Count II, Angle argues that Congress exceeded its Commerce Clause power in enacting 18 U.S.C. sec. 2252(a)(4)(B), the statute he was convicted of violating. He also contends that the government failed to satisfy the interstate commerce (or jurisdictional) element of sec. 2252(a)(4)(B) and argues that there was insufficient evidence upon which to convict him under the statute. Furthermore, Angle asserts that the district court erred in admitting evidence of his prior sex crime convictions, as well as evidence that he possessed child pornography when he returned from Mexico on January 26, 1998.

Regarding sentencing, Angle contends that the district court erred in upwardly departing from the applicable guideline range pursuant to U.S.S.G. sec. 4A1.3. With respect to his base offense level for Count III, Angle argues that the district court erred in applying a cross-reference to U.S.S.G. sec. 2A3.1, the sexual abuse guideline. Angle also challenges the court's two-level enhancement in offense level for the underage victim, pursuant to U.S.S.G. sec. 2A3.1(b)(2)(B). Finally, Angle contends that the district court erred in requiring him to register as a sex offender as a special condition of supervised release.

II
A.  Motion to Suppress

Angle asserts that the district court erred in denying his motion to suppress evidence obtained as a result of the search of his residence. In support of his challenge, Angle maintains that the government's search was not supported by probable cause. The district court denied the suppression motion as untimely and alternatively ruled that it would have denied the motion on its merits because the affidavit in support of the search warrant described circumstances sufficient to create a reasonable belief that contraband or evidence of a crime would be found in Angle's residence at the time of the search.

1.  Timeliness of Suppression Motion

The district court set June 12, 1998 as the deadline for the submission of pretrial motions, but Angle did not move to suppress the motion until September 14, 1998, just one day before the

commencement of trial./10 In proffering a reason for the tardy motion, Angle's counsel explained that because the parties were in plea negotiations and a guilty plea would have rendered a suppression motion moot, he waited to present the motion. The record indicates that Angle filed a motion to enter a guilty plea on September 9, 1998, and two days later, withdrew that motion. He then orally made the motion to suppress.

Because a district court has discretion when considering an untimely motion, we may disturb the court's ruling only for clear error. See United States v. Hamm, 786 F.2d 804, 806 (7th Cir. 1986). Under Fed. R. Crim. P. 12(f), "[f]ailure by a party to raise defenses . . . at the time set by the court . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." While Angle acknowledges the waiver requirement of Rule 12(f), he maintains that he had a legitimate explanation for the untimely motion. We disagree. Here, as indicated by counsel's statements, Angle made a calculated decision not to file the suppression motion by the court-imposed deadline. Although it would have been wiser to file the suppression motion in the event the guilty plea was not entered, Angle chose not to comply with the motion cut-off date. That decision constitutes a clear waiver. Accordingly, the district court did not abuse its discretion in denying Angle's suppression motion for untimeliness.

2. Merits of Suppression Motion

The district court alternatively ruled that the suppression motion would fail on the merits because the affidavit in support of the search warrant sufficiently demonstrated probable cause for the search. We review a district court's factual findings in a ruling on a motion to suppress evidence for clear error, and the court's legal determinations de novo. See United States v. Hall, 142 F.3d 988, 993 (7th Cir. 1998).

Angle argues that the search warrant affidavit failed to establish probable cause for the search of his residence. In the affidavit, Inspector Sadowitz averred, among other things, that Angle had ordered (and paid for) five child pornography videotapes on January 10, 1998. Inspector Sadowitz further stated that Angle aborted that order only after he was caught in possession of a suspected child pornography videotape on January 26, 1998. Inspector Sadowitz explained that he was advised by a Customs agent that when

Angle re-entered the country from Mexico, he had possessed three videotape cassettes, one of which contained child pornography. Inspector Sadowitz also indicated (1) that Angle corresponded regularly via e-mail with a child pornography distributor (Jake's Photo Service); (2) that Angle wrote in one of those e-mail correspondences that he was "updating [his] inventory" and that he had "more German titles, more action boys, game boys, explosion boys & boys collection"; and (3) that Angle had two prior convictions for sex crimes involving minor boys. After providing a detailed account of his training and experience, Inspector Sadowitz stated, among other things, that individuals who use children as sexual objects often collect child pornography and rarely, if ever, dispose of it.

Angle contends that none of Inspector Sadowitz's averments, whether considered separately or together, establish probable cause to believe child pornography itself or other evidence of child pornography crimes would be found at his residence. According to Angle, Inspector Sadowitz's affidavit is deficient because the child pornography videotapes he ordered were never delivered and the e-mail message regarding his videotape inventory was "ambiguous."

The district court found that the search warrant was supported by probable cause, reasoning that Inspector Sadowitz's affidavit described circumstances sufficient to warrant a person of reasonable prudence to believe that contraband or evidence of a crime would be found in Angle's residence. We agree. As this court recently stated:

Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists.
United States v. Sawyer, 224 F.3d 675, 679 (7th Cir. 2000) (citations omitted).

Here, Inspector Sadowitz's averments, taken together, establish more than "a probability or substantial chance" that a search of Angle's residence would reveal child pornography contraband or other evidence of child pornography crimes. Indeed, the search occurred within days of his return to the United States with suspected child pornography material and his request to delay shipment of the child pornography videotapes he ordered from his Internet supplier

(Jake's Photo Service). Thus, we find Angle's
challenge unpersuasive.

B.  Commerce Clause Challenge

Angle claims that 18 U.S.C. sec. 2252(a)(4)(B)
is an unconstitutional statute, enacted in
violation of the Commerce Clause./11
Specifically, Angle contends that Congress
exceeded its authority under the Commerce Clause
by making the intrastate possession of child
pornography a federal crime. The Supreme Court's
decision in United States v. Lopez, 514 U.S. 549
(1995), provides the framework for analyzing his
Commerce Clause challenge.

In Lopez, the Supreme Court struck down the
Gun-Free School Zones Act (GFSZA), 18 U.S.C. sec.
922(q), which made it a federal crime for any
individual to knowingly possess a firearm near a
school zone, on the grounds that regulating such
activity exceeded Congress's Commerce Clause
authority. The Lopez Court held that the Commerce
Clause permits Congress to regulate: (1) the
channels of interstate commerce; (2) the
instrumentalities of interstate commerce, or
persons or things in interstate commerce; and (3)
activities that substantially affect interstate
commerce. Id. at 558-59. Finding the first two
categories inapt, the Court concluded that the
GFSZA could be upheld, if at all, only if it fell
into the third category of activities. The Court
invalidated the GFSZA as a category three
regulation because (1) it was a criminal statute
that had "nothing to do with [interstate]
'commerce' or any kind of economic enterprise";
(2) it contained "no jurisdictional element which
would ensure, through case-by-case inquiry, that
the firearm possession in question affect[ed]
interstate commerce"; and (3) Congress had
offered no legislative findings establishing a
nexus between interstate commerce and the
possession of a gun in a school zone. Id. at
559-62.

Angle contends that sec. 2252(a)(4)(B), like the
GFSZA, can be upheld, if at all, only as a
category three regulation. He acknowledges that
sec. 2252(a)(4)(B), unlike the GFSZA, has an
explicit jurisdictional element requiring the
transport in interstate or foreign commerce of
the visual depictions or the materials used to
produce them. But he argues that the
jurisdictional element or "hook" is insufficient
by itself to render sec. 2252(a)(4)(B)
constitutional. According to Angle, the
jurisdictional element does not automatically
ensure the constitutionality of sec.
2252(a)(4)(B) because it fails to "limit" the
statute's intrastate application to activity that

substantially affects interstate commerce. To determine if sec. 2252(a)(4)(B) passes constitutional muster, Angle urges us (on the authority of Lopez) to examine whether the behavior regulated (intrastate possession of child pornography) "arises out of or [is] connected with economic activity, which viewed in the aggregate, substantially affects interstate commerce" (Lopez, 514 U.S. at 561). He claims that since simple possession of child pornography does not involve an economic activity, sec. 2252(a)(4)(B) cannot satisfy the substantial effects test.

The government defends sec. 2252(a)(4)(B) by arguing that the statute's jurisdictional element "covers only activity that has a substantial effect on interstate commerce" in that the pornography itself or the materials from which the pornography has been produced must have traveled in interstate commerce. The First and Eighth Circuits both found this argument persuasive and upheld the constitutionality of sec. 2252(a)(4)(B) as a category three regulation under the Commerce Clause. See United States v. Bausch, 140 F.3d 739 (8th Cir. 1998), cert. denied, 525 U.S. 1072 (1999); United States v. Robinson, 137 F.3d 652 (1st Cir. 1998). Those two circuits determined that, unlike the GFSZA at issue in Lopez, sec. 2252(a)(4)(B) has a jurisdictional element which ensures, through a case-by-case inquiry, that the pornography possession in question affects interstate commerce. See Bausch, 140 F.3d at 741; Robinson, 137 F.3d at 656. Moreover, as an alternative basis for upholding the statute, the First Circuit in Robinson, supra, found that sec. 2252(a)(4)(B) was a legitimate means by which Congress can control the "nationwide demand" for pornography materials. 137 F.3d at 656.

The Third Circuit, although ultimately holding that sec. 2252(a)(4)(B) was constitutional, disagreed with the outcome reached by the First and Eighth Circuits regarding sec. 2252(a)(4)(B)'s jurisdictional element. In United States v. Rodia, 194 F.3d 465, 473 (3rd Cir. 1999), cert. denied, ___ U.S. ___, 120 S.Ct. 2008 (2000), the Third Circuit found that "the [statute's] jurisdictional element--the requirement that precursor materials like film or cameras moved in interstate commerce--is only tenuously related to the ultimate activity regulated: intrastate possession of child pornography." The Rodia court reasoned that:

A jurisdictional element is only sufficient to ensure a statute's constitutionality when the element either limits the regulation to interstate activity or ensures that the

intrastate activity to be regulated falls within one of the three categories of congressional power.

As a practical matter, the limiting jurisdictional factor is almost useless here, since all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce and will therefore fall within the sweep of the statute.

Id. (citations omitted). Thus, the court declined to uphold sec. 2252(a)(4)(B) on the grounds that it contains a jurisdictional element. Instead, the court upheld the statute as a category three regulation by finding a sufficient nexus between interstate commerce and the intrastate activity regulated by sec. 2252(a)(4)(B). Rodia, 194 F.3d at 473-81.

While we have our doubts whether sec. 2252(a)(4)(B)'s jurisdictional element (particularly with respect to precursor materials) guarantees that the activity regulated (intrastate possession of child pornography) substantially affects interstate commerce and are inclined to agree with the Third Circuit's reasoning, we decline to reach this question because we believe the statute passes constitutional muster as a category three regulation via a market theory (as discussed below)./12

In analyzing the constitutionality of sec. 2252(a)(4)(B), our task is to determine whether Congress could have had a rational basis for believing that the intrastate possession of child pornography has a substantial effect on interstate commerce; and, further, that the regulatory means chosen were "reasonably adapted to the end permitted by the Constitution." See Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc., 452 U.S. 264, 276 (1981); see also United States v. Kenney, 91 F.3d 884, 886 (7th Cir. 1996).

Angle's contention that intrastate possession of child pornography has little or no bearing on interstate commerce ignores the interstate demand for child pornography which Congress took into consideration in enacting the statutory scheme under sec. 2252. For instance, Congress found that "'child pornography and child prostitution have become highly organized, multimillion dollar industries that operate on a nationwide scale,' and 'that such prostitution and the sale and distribution of such pornographic materials are carried on to a substantial extent through the mails and other instrumentalities of interstate

and foreign commerce.'" United States v. Winningham, 953 F.Supp. 1068, 1074 n.13 (D. Minn. 1996) (quoting S.Rep. No. 95438, at 3-5 (1978), reprinted in 1978 U.S.C.C.A.N. 40, 42-43). There can be no debate that "interstate trafficking in child pornography has an effect on interstate commerce." Rodia, 194 F.3d at 474. However, Congress amended sec. 2252 in late 1988 to include the clause at issue here, in large part, to close a loophole in the original regulatory scheme which was being "undercut by the child pornographers who continued to manufacture their own pornography intrastate." Id. at 479.

We agree with the Third Circuit that, by adding sec. 2252(a)(4)(B) to the regulatory scheme, Congress could have rationally reasoned as follows:

Some pornographers manufacture, possess, and use child pornography exclusively within the boundaries of a state, and often only within the boundaries of their own property. It is unrealistic to think that those pornographers will be content with their own supply, hence they will likely wish to explore new or additional pornographic photographs of children. Many of those pornographers will look to the interstate market as a source of new material, whether through mail order catalogs or through the Internet. Therefore, the possession of "home grown" pornography may well stimulate a further interest in pornography that immediately or eventually animates demand for interstate pornography. It is also reasonable to believe the related proposition that discouraging the intrastate possession of pornography will cause some of these child pornographers to leave the realm of child pornography completely, which in turn will reduce the interstate demand for pornography.

Id. at 477.

With this understanding of individual behavior in a market system, Congress could have rationally believed that intrastate possession of child pornography bears a substantial relationship to interstate commerce. Moreover, as the First Circuit observed:

By outlawing the purely intrastate possession of child pornography in sec. 2252(a)(4)(B), Congress can curb the nationwide demand for these materials. We believe that such possession, 'through repetition elsewhere,' helps to create and sustain a market for sexually explicit materials depicting minors.

Robinson, 137 F.3d at 656 (quoting Lopez, 514

U.S. at 567, 115 S.Ct. 1624). We join the First and Third Circuits in finding that there is a nexus, via a market theory, between interstate commerce and the intrastate possession of child pornography.

We believe that sec. 2252(a)(4)(B), unlike the gun control law in Lopez, was "an essential part of a larger regulation of economic activity . . . that arise[s] out of or [is] connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce."/13 Lopez, 514 U.S. at 561. To effectively regulate child pornography, Congress could have legitimately found it necessary to have "federal control over both the interstate and local versions of the activity." Rodia, 194 F.3d at 479; see also Kenney, 91 F.3d at 890 ("Permitting unregulated intrastate possessions and transfers of machine guns . . . indirectly undermines, via a market theory, the effectiveness of the federal attempt to regulate interstate commerce in machine guns."). Thus, because sec. 2252(a)(4)(B) prohibits intrastate activity that is substantially related to the closely regulated interstate market of child pornography, we conclude that the statute is a valid exercise of Congress's Commerce Clause power.

In finding sec. 2252(a)(4)(B) constitutional, we also agree with the Third Circuit that the statute was reasonably adapted to a permissible end because "there is a rational connection between the regulatory means (punishing the intrastate possession of child pornography) and the asserted ends (prohibiting interstate commerce in child pornography and reducing the inevitable harm to children that stems from their involvement in child pornography)." Rodia, 194 F.3d 481. While Angle argues that the lack of express congressional findings with respect to sec. 2252(a)(4)(B) militates against its constitutionality, "Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce." Lopez, 514 U.S. at 562. In any event, sec. 2252(a)(4)(B) is not a statute that "plows thoroughly new ground" as Congress has long legislated in the area of child pornography, and given the legislative history of the regulatory scheme, the addition of the clause at issue "was not novel but incremental." See Kenney, 91 F.3d at 890; see also Maryland v. Wirtz, 392 U.S. 183, 190 n.12 (1968) (noting subsequent legislation was "presumably based on similar findings and purposes with respect to the areas newly covered" where Congress had earlier passed related legislation with relevant findings). Accordingly, we find Angle's Commerce

Clause challenge unavailing.

C.  Sufficiency of the Evidence

At the close of the government's case, Angle made a motion for a judgment of acquittal arguing that the computer diskettes and zip disks introduced to prove Count II (possession of child pornography) had been altered by the government in its effort to recover pornographic material, and therefore, this evidence could not be included among the "3 or more" matters required to support a conviction under sec. 2252(a)(4)(B). The district court denied the motion. "Challenging the sufficiency of the evidence is an uphill battle and the defendant bears a heavy burden." United States v. Wallace, 212 F.3d 1000, 1003 (7th Cir. 2000). In reviewing the sufficiency of the evidence supporting Angle's conviction, we must examine the evidence "in the light most favorable to the government, drawing all reasonable inferences in its favor." United States v. Frazier, 213 F. 3d 409, 416 (7th Cir. 2000).

1.  Section 2252(a)(4)(B)'s "3 or more" Requirement

Count II of the superseding indictment charged Angle with "knowingly possess[ing] more than 3 items, including computer disks, videotape and computer zip disks, all of which had been transported in interstate commerce and all of which contained visual depictions of minor children engaging in sexually explicit conduct," in violation of sec. 2252(a)(4)(B). Angle argues that with the exception of the videotape cassette, the rest of the evidence that the government showed to contain child pornography had been altered because the files recovered from the diskettes and zip disks were deleted prior to the search on February 3, 1998. As a result, Angle claims that there was insufficient evidence upon which to convict him.

As noted earlier, the February 3 search of Angle's residence produced one videotape cassette, a number of computer diskettes and several zip disks. Angle admits that the videotape contained child pornography. With respect to the computer diskettes and zip disks found at his residence, Angle claims that he had deleted the pornography files months before the search. Therefore, he argues that the government cannot show that he possessed child pornography on those items "on or about" the date of the search as charged in the superseding indictment./14

In reply, the government maintains that the bulk of the pornography contained on the confiscated diskettes and zip disks was "hidden [that is] . . . erased, rendering them temporarily unavailable, but nonetheless viable." The government asserts that neither the diskettes nor the zip disks had been reformatted in an effort to destroy the files contained on them. The government posits that Angle knowingly possessed child pornography because he maintained the ability to recover the files by using a specialized utility program, such as Norton Utilities, which is commonly available in computer software stores. While no such program was found in Angle's residence at the time of the search, the government contends that Angle could have nonetheless obtained access to someone else's computer equipped with the capacity to recover the pornography.

Although we find the parties' arguments interesting, we earlier noted that not all of the pornography files contained on the confiscated diskettes were deleted by Angle. In its brief, the government submits that the prosecutor admitted into evidence several diskettes containing child pornography material that had not been deleted and which were obtained during the February 3 search. In his brief, Angle does not refute the government's contention, arguing instead that the government failed to show that the admitted evidence satisfied the jurisdictional element of sec. 2252(a)(4)(B). Because the record supports the government's contention, including the report prepared by McDonnell, a computer specialist, who analyzed the confiscated diskettes and zip disks, we find that the government met its burden of showing that Angle possessed "3 or more" matters of child pornography at the time of the search./15

2.  Section 2252(a)(4)(B)'s Jurisdictional Element

We turn next to Angle's argument that the government failed to show that the child pornography found in his residence satisfied the jurisdictional element of sec. 2252(a)(4)(B). In relevant part, sec. 2252(a)(4)(B) prohibits the knowing possession of media/16 which contain "any visual depiction . . . which was produced using materials which have been mailed or . . . shipped or transported [in interstate or foreign commerce], by any means including by computer . . . ." Although the government introduced evidence that none of the computer diskettes found in Angle's residence had been manufactured in Indiana and that the videotape cassette had been manufactured in New Jersey, Angle argues

that this evidence alone is insufficient to satisfy sec. 2252(a)(4)(B)'s jurisdictional requirement because there was no proof that the diskettes that traveled in interstate commerce were used to create the visual depictions at issue.

In support of this argument, Angle relies on United States v. Wilson, 182 F.3d 737, 742-43 (10th Cir. 1999), where the Tenth Circuit held that in order to fulfill the statute's jurisdictional requirement under a theory that computer diskettes were used to produce pornographic visual depictions, the government must present evidence that the computer diskettes were used to actually produce the computer graphic files contained thereon. In reversing the criminal defendant's conviction under sec. 2252(a)(4)(B), the Tenth Circuit found that the government had failed to satisfy the jurisdictional element. The court noted, among other things, that the government's case "left unanswered the question of whether a computer graphics file is produced or created prior to being recorded on a [computer diskette], or whether, instead, it only comes into being at or after the point it is recorded on the storage media." Id. at 743.

The government in this case argues that we should reject the Tenth Circuit's interpretation of the jurisdictional term "produced" because it is "too narrow." The government further contends that its demonstration at trial regarding the recovery of the deleted files sufficiently proved "the interaction between the pornography and the [interstate] commodity." In his reply brief, Angle submits that "[w]hile the government introduced photographs that had been stored on zip disks and diskettes that had traveled in interstate commerce, it failed to demonstrate that these images were produced using those zip disks and diskettes." Appellee's Reply Br. at 7 (emphasis in original).

While the term "produced" is not defined by statute, the term "producing" is defined as "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. sec. 2256(3). In United States v. Lacy, 119 F.3d 742 (9th Cir. 1997), the Ninth Circuit held that evidence that the defendant copied child pornography using computer equipment (i.e., a computer and computer diskettes) that had traveled in interstate commerce satisfied the jurisdictional term "produced," as used in sec. 2252(a)(4)(B). The court found that the visual depictions in issue there were "created-- 'produced'--when [defendant] used his computer to download data," which we take to mean copying the

child pornography images (or visual depictions) onto computer diskettes. Id. at 749. In concluding that the government had proved the jurisdictional element of sec. 2252(a)(4)(B), the court reasoned that "[t]he statute requires only that visual depictions be produced; it does not matter that the depictions on [defendant's] computer were copies rather than originals." Id.

We concur with the Ninth Circuit's analysis. The Tenth Circuit's interpretation of the jurisdictional term "produced" is far too restrictive as it essentially renders meaningless the statutory definition of "producing" (which includes the terms "issuing," "publishing," or "advertising"), and focuses entirely on the circumstances surrounding the original or actual production of the visual depiction. We believe, like the Ninth Circuit, that computerized visual depictions (i.e., computer graphic files) are "produced" when computer equipment, including computer diskettes, are used to copy the depictions onto the diskettes that have traveled in interstate commerce. See Lacy, 119 F.3d at 747-49; see also United States v. Perreault, 195 F.3d 1133, 1134-35 (9th Cir. 1999) (noting sec. 2252(a)(4)(B) required "proof that the physical medium of the computer, i.e., the drives or discs, was known to contain the prohibited visual depictions and that the physical matter had passed through interstate or foreign commerce").

Here, it is undisputed that the computer diskettes traveled in interstate commerce. And because a reasonable factfinder could find that Angle "produced" the pornographic files by downloading or copying images onto the computer diskettes that traveled interstate, we find that the government satisfied the jurisdictional element of sec. 2252 (a)(4)(B).

D.  Evidentiary Challenges

    1.  Prior Convictions
    Angle contends that the district court erred in admitting evidence of his prior convictions under Federal Rule of Evidence 414./17 Angle was previously convicted for sodomy, in 1977, and child molestation, in 1987. Prior to trial, the government had filed a notice of intent to admit evidence of these two convictions under Federal Rule of Evidence 403, 404, 413, and 414, arguing that the prior convictions demonstrated Angle's "intent" to attempt to obtain pornography through the mail (Count I) and both his "intent" and "motive" for attempting to solicit a minor to engage in a sexual act for which any person can be criminally prosecuted under federal, state, or local law (Count III). In rebuttal, Angle argued that the prior convictions were unfairly

prejudicial and that they were not "offenses of child molestation" within the meaning of Rule 414.

On appeal, Angle claims that the court's admission of the prior sex crime convictions was improper because the ages of the victims did not fall within the meaning of a "child" for purposes of Rule 414./18 Because Angle did not raise this argument below, he submits, and the government concurs, that our review is for plain error. Plain error is: (1) an error; (2) that is plain, meaning obvious or clear; and (3) that affects substantial rights. See United States v. Olano, 507 U.S. 725, 732-34 (1993). Under this exacting standard, we will not reverse the district court unless, in our discretion, we find the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 736-37.

While conceding that the district court erred in admitting the 1977 sodomy conviction under Rule 414, the government submits that the conviction could nonetheless have been admitted under Rule 413./19 The government further asserts that the admission of that conviction was, in any event, harmless error. As for the 1987 child molestation conviction, the government maintains that the court properly admitted the evidence under Rule 414.

Even if Angle were able to establish plain error from the court's admission of these two convictions, we are not inclined to correct the error because it did not seriously affect the fairness, integrity or public reputation of judicial proceedings. See id.; see also United States v. Lindsey, 123 F.3d 978, 985 (7th Cir. 1997). Our recitation of the facts alone demonstrates that there was overwhelming evidence on which to convict Angle, a self-professed "boy lover." For instance, with respect to Counts I and II, the strongest evidence demonstrating guilt was Angle's order of child pornography videotapes from Jake's Photo Service and his possession of a videotape cassette and computer diskettes containing child pornography. As for Count III (attempted solicitation of a minor, by Internet and telephone, for purposes of sexual gratification), the evidence regarding the various conversations Angle had with Jeff/Wolf One overwhelmingly supports that conviction and Angle's argument downplaying the solicitation (over the Internet and telephone) as mere "fantasy" is itself fanciful./20 Thus, we decline to correct any error by the district court with respect to its evidentiary rulings.

2. Uncharged Child Pornography Possession

Angle argues that the district court erred in admitting evidence that he possessed child pornography when Customs agents confiscated videotape cassettes he had in his possession on January 26, 1998. Angle's encounter with Customs agents occurred less than two weeks after he had ordered child pornography videotapes over the Internet and nearly one week before the search of his residence. The government sought to admit this evidence to show that "the defendant acted knowingly and without mistake in possessing or attempting to possess child pornography, and in attempting over the Internet and by phone to engage a minor in a criminal sexual act." The district court, over Angle's objection, admitted the evidence to show knowledge and lack of mistake pursuant to Federal Rule of Evidence 404(b)./21 We review the district court's evidentiary ruling only for an abuse of discretion. United States v. Roberts, 933 F.2d 517, 519 (7th Cir. 1991). Under this deferential standard, Angle bears a heavy burden in challenging the district court's decision to admit the challenged evidence. We have previously stated that evidence can be admitted pursuant to Rule 404(b) if: (1) it is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) it shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) it is sufficient to support a jury finding that the defendant committed the extrinsic act; and (4) it has probative value that is not substantially outweighed by the danger of unfair prejudice. See United States v. Allison, 120 F.3d 71, 74-75 (7th Cir. 1997).

Here, Angle contends that his knowledge or lack of mistake was not "in issue" because he never contested whether he acted "knowingly" for purposes of the charged offenses. However, the government submits that it bears the burden of establishing each element of the charged offenses. Angle counters that the evidence at issue was irrelevant because his counsel admitted during opening statements that Angle knew he was ordering child pornography over the Internet and that he did indeed possess child pornography prior to February 3, 1998. The government retorts that a lawyer's opening statement is not evidence and therefore has no bearing on this issue.

We find no abuse of discretion by the district court in admitting the challenged evidence. We agree with the district court's finding that this evidence, like the charged offenses, involved exploitation of minors for sexual gratification and that the proofs would likely support a jury

finding that Angle committed the extrinsic act (i.e., possessing child pornography on January 26, 1998). Moreover, the government argues that the challenged evidence was "inextricably" connected with the evidence of the charged offenses and also helped to complete the story regarding the charged offenses (e.g., the evidence provided a potential explanation for why Angle delayed shipment of his order of child pornography videotapes, why he arranged for the deletion of pornography contained on computer equipment, and why no computer hard drive was recovered). In Roberts, we observed that "evidence of uncharged criminal activity is not considered 'other crimes' evidence under [Federal Rule of Evidence] 404(b) if it 'arose out of the same transaction or series of transaction as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'" 933 F.2d at 520 (internal quotation and citation omitted). Here, we agree that the challenged evidence helped complete the story behind the charged offenses. But even if the challenged evidence should have been excluded, there was substantial evidence (as discussed earlier) upon which to convict Angle for the charged offenses.

E.   Sentencing Challenges

   1.   Upward Departure

      Angle contends that the district court erred in imposing an upward departure pursuant to U.S.S.G. sec. 4A1.3./22 Because Angle's 1977 sodomy conviction was too old to be counted in determining his criminal history category under the guidelines, the government sought an upward departure that would more accurately reflect Angle's criminal history. Angle contends that the court did not follow proper procedure in granting the government's request for an upward departure and that the record offers no evidence that the court used the sentencing guidelines to fashion the departure.

      Guideline sec. 4A1.3 provides for an upward departure where "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal conduct or the likelihood that the defendant will commit other crimes." In this circuit, if a court chooses to depart from the sentencing guidelines, it must identify the factors in the defendant's criminal history that the guidelines did not take into account and that are proper grounds for departure. United States v. Tai, 994 F. 2d 1204, 1213 (7th Cir. 1993).

While the district court identified factors in Angle's criminal history not taken into account under the sentencing guidelines (to wit, the 1977 sodomy conviction and his likelihood for recidivism), the court failed, as the government concedes, to offer an explanation as to how the degree of the departure is linked to the structure of the sentencing guidelines. See United States v. Ferra, 900 F.2d 1057, 1062-64 (7th Cir. 1990); United States v. Scott, 914 F.2d 959, 963-65 (7th Cir. 1990). We have previously instructed courts to justify departures in terms of the structure of the sentencing guidelines. In Tai, we outlined the proper methodology that courts should employ in making departures based on inadequate criminal history under sec. 4A1.3:

If the defendant's criminal history category is found not to adequately reflect the seriousness of his past crimes or the likelihood of his committing future crimes, the district court may depart from the otherwise applicable guideline range. To do so, the court must identify the factors in the defendant's criminal history that the guidelines did not take into account and that are proper grounds for departure. Then, the court must explain why those factors make the defendant's criminal history more comparable to criminal histories found in a higher category than to those found in the defendant's category. In effect, this requires the district court to assign some value to each ground for departure; in that regard, guideline provisions dealing with analogous factors should be considered. The sentence that is ultimately chosen must fall within the guideline range applicable to whichever higher criminal history category best represents the defendant's criminal history.

994 F.2d at 1213-14 (citations omitted).

The district court failed to adhere to this procedure. Thus, on remand, the court must offer an explanation for the extent of its departure in accordance with the procedures outlined above./23


   2. U.S.S.G. sec. 2G1.1(c)(2)'s Cross-Reference to
      U.S.S.G. sec. 2A3.1

In Count III, the government charged Angle with attempting to solicit a minor via the Internet and telephone to engage in prohibited sexual conduct, in violation of 18 U.S.C. sec. 2422(b). For violations of 18 U.S.C. sec. 2422, U.S.S.G. sec. 2G1.1(c)(2) states: "If the offense involved criminal sexual abuse, attempted criminal sexual abuse, or assault with intent to commit criminal sexual abuse, apply sec. 2A3.1 (Criminal Sexual

Abuse; Attempt or Assault with Intent to Commit Criminal Sexual Abuse)." The district court applied this cross-reference to U.S.S.G. sec. 2A3.1, the sexual abuse guideline, to increase Angle's base offense level for Count III from fourteen to twenty-seven. Angle contends that the district court erred in applying sec. 2G1.1(c)(2)'s cross-reference to sec. 2A3.1. Because Angle challenges the court's application of sec.2G1.1(c)(2), our review is de novo. See United States v. Turchen, 187 F.3d 735, 738 (7th Cir. 1999).

In support of his challenge, Angle argues that the underlying conduct in Count III did not involve "criminal sexual abuse," "attempted criminal sexual abuse," or "assault with intent to commit criminal sexual abuse," and therefore, the cross-reference to sec. 2A3.1 was inapplicable. Angle contends that the district court should have derived the meaning of the terms used in sec. 2G1.1(c)(2) (i.e., criminal sexual abuse, attempted criminal sexual abuse, or assault with intent to commit sexual abuse) by looking to the criminal violations, 18 U.S.C. sec.sec. 2241-42 (aggravated and simple sexual abuse), to which the sexual abuse guideline, sec. 2A3.1, applies./24 Because sec. 2G1.1(c)(2) itself does not define these terms, the government submits that U.S.S.G. sec. 1B1.3 (Relevant Conduct) permits a district court to consider "offense conduct," including all acts and omissions "that occurred during the commission of the offense of conviction," in devising an appropriate sentence. U.S.S.G. sec. 1B1.3(a)(1).

As the government observes, the term "offense" is defined broadly to include not only "the offense of conviction,"/25 but also all conduct deemed relevant by sec. 1B1.3. U.S.S.G. sec. 1B1.1 cmt. 1(l). Where, as here, the guidelines expressly provide for application of sec. 2A3.1--the sexual abuse guideline--and the necessary proof is offered, the government is correct that the district court may punish a defendant for relevant conduct (e.g., "all acts and commissions . . . that occurred during the commission of the offense of conviction," sec. 1B1.3(a)(1)(A)), notwithstanding whether the defendant was actually convicted of a particular offense. See United States v. Dolloph, 75 F.3d 35, 38-40 (1st Cir. 1996). The clear intent behind sec. 2G1.1(c) (2)'s cross-referencing to the sexual abuse guideline, sec. 2A3.1, is to attach the proper penalty for the underlying sexual conduct. Here, the district court did not render any particularized findings as to whether Angle engaged in activity that reasonably amounted to (i.e., "involved") criminal sexual abuse or attempted sexual abuse as defined by the

federal statutes. Because Angle's argument that the underlying "offense" conduct "bears no resemblance" to the kind of conduct prohibited by sec.sec. 2241 and 2242 was unanswered, we remand for a redetermination of whether the cross-reference to the sexual abuse guideline, sec. 2A3.1, is applicable to this case.

### 3. Two-Level Enhancement Under U.S.S.G. sec. 2A3.1(b)(2)(B)

Angle contends that the district court erred in increasing his base offense level by two levels under U.S.S.G. sec. 2A3.1(b)(2)(B). Section 2A3.1(b)(2)(B) authorizes a two-level enhancement "if the victim had attained the age of twelve years but had not attained the age of sixteen years." Angle claims that since there was no real or actual "victim" in this case, sec. 2A3.1(b)(2)(B) does not apply. Angle did not object to the district court's application of sec. 2A3.1(b)(2)(B), so we review the forfeited issue for plain error. The term "victim" is not defined by sec. 2A3.1 and Angle submits that he has not located any case authority applying sec. 2A3.1(b)(2)(B) to a "fictional" victim. Angle correctly observes that none of our prior cases nor any decided by our sister circuits have considered the question of whether sec. 2A3.1 applies to fictional victims./26

Considering the lack of case authority on this issue, we conclude that, if there was error, Angle cannot demonstrate (which he must given the plain error standard) that the error was "clear or obvious" (in other words, that "a legal rule was violated during the district court proceedings"). Olano, 507 U.S. at 734 ("At a minimum, a court of appeals cannot correct an error pursuant to [Federal Rules of Criminal Procedure] 52(b) unless the error is clear under current law."); cf. United States v. Byrd, 116 F.3d 770, 773 (5th Cir. 1997) (plain error standard not met where the only court to address contested issue ruled contrary to defendant's position); see also United States v. Frady, 456 U.S. 152, 163 (1982) (plain errors are those so conspicuous that "the trial judge and prosecutor were derelict in countenancing [them], even absent the defendant's timely assistance in detecting [them]"). On this basis, we find that the district court did not commit plain error by applying sec. 2A3.1(b)(2)(B) in the manner in which it did.

### 4. Supervised Release

Angle finally contends that the district court

erred by imposing a sex offender registration requirement as a special condition of supervised release. He claims that the district court should have provided notice of its intent to impose the condition because it was analogous to an upward departure. The government acknowledges that Angle did not receive notice of the special condition prior to sentencing. Nevertheless, the government contends that the imposition of the special condition for sex offender registration is directly related to the offense charged and therefore it was within the district court's discretion to impose the condition.

We review for abuse of discretion the district court's imposition of a special condition of supervised release. United States v. Schave, 186 F.3d 839, 841 (7th Cir. 1999). A district court may impose a special condition of supervised release that it deems appropriate so long as the condition: "(1) is reasonably related to specified sentencing factors, namely the nature and circumstances of the offense and the history and characteristics of the defendant; (2) is reasonably related to the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) involves no greater deprivation of liberty than is reasonably necessary to achieve these goals; and (4) is consistent with any pertinent policy statements issued by the Sentencing Commission." Id. (citations omitted).

Here, Angle contests the district court's imposition of a sex offender registration requirement (which is not listed among the mandatory conditions set forth in 18 U.S.C. sec. 3563(a) or the discretionary conditions of probation set forth in 18 U.S.C. sec. 3563(b)).

Federal Rule of Criminal Procedure 32(c)(1) states in part: "At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence." The Supreme Court held in Burns v. United States, 501 U.S. 129, 138 (1991), that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give parties reasonable notice that it is contemplating such a ruling." The Court observed that: "'Th[e] right to be heard has little reality or worth unless one is informed' that a decision is

contemplated." Id. at 501 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950)). In this regard, an interpretation of Rule 32 not requiring notice would be "inconsistent with Rule 32's purpose of promoting focused, adversarial resolution of the legal and factual issues relevant to fixing Guidelines sentences." Burns, 501 U.S. at 137.

Applying Rule 32 and the Supreme Court's decision in Burns, the Fifth Circuit has required that reasonable presentence notice be given to criminal defendants--either by the presentence report, a prehearing submission, or the district court itself--when the court is considering imposing a sex offender registration as a special condition of supervised release. See United States v. Coenen, 135 F.3d 938 (5th Cir. 1998). The Fifth Circuit in Coenen, supra, concluded that since the sex offender registration requirement was analogous to an upward departure (as it was not expressly contemplated by the guidelines), Rule 32 and Burns required presentencing notice./27 We agree with the Fifth Circuit's decision in Coenen and find its reasoning apt to this case.

Because we believe Angle was entitled to presentencing notice in this case, the district court should reconsider the issue on remand after providing the parties with an opportunity to comment on the appropriateness of the sex offender registration requirement as a special condition of supervised release.

III

For the foregoing reasons, we AFFIRM Angle's convictions, VACATE his sentence, but REMAND the case for resentencing consistent with this opinion.

/1 In investigating his children's Internet activity, Gross logged onto the Internet using their computer screen name, "Wolf One 676," and created an electronic (i.e., on-line) profile that Wolf One 676 ("Wolf One") was a 13-year-old male named "Jeff". We will refer to this identity as "Jeff/Wolf One".

/2 Jake's Photo Service and Metro Comp Services were two pornography-related businesses that the federal government had closed and began using for its undercover operation, targeting individuals who had bought child pornography material from those businesses in the past.

/3 Prior to sending the e-mail messages, a search of Jake's Photo Service and Metro Comp Services

yielded numerous items of child pornography as well as customer membership lists. Angle's name appeared on one of the customer lists as having a special membership which allowed him to access child pornography video lists via e-mail.

/4 In relevant part, 18 U.S.C. sec. 2252(a)(2) provides criminal penalties for any person who attempts to:

knowingly receive[ ], or distribute[ ], any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, . . . if--

(A)  the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B)  such visual depiction is of such conduct[.]

/5 At the time of Angle's arrest, sec. 2252 provided in relevant part:

Any person who . . . knowingly possesses 3 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if--

(i)  the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(ii)  such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

18 U.S.C. sec. 2252(a)(4)(B) (1994) (amended 1998, in part, to reduce from "3 or more" to "1 or more" the number of matters containing child pornography required for a conviction; the amendment does not apply to Angle).

/6 Section 2422(b) states:

Whoever, using the mail or facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any

person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

/7 The government was also able to recover deleted child pornography files from several zip disks using Norton Utilities. The zip disks along with the hard copy images that were recovered from them were admitted into evidence.

/8 In Count III, the government charged Angle with violating 18 U.S.C. sec. 2422 by "knowingly us[ing] a facility or means of interstate commerce, including the telephone wires, and Internet, to attempt to persuade, induce and entice a child, under 18 years of age, to engage in a sexual act for which any person may be criminally prosecuted under federal, state or local law."

/9 For violations of 18 U.S.C. sec. 2422 (Count III), the appropriate guideline is sec. 2G1.1. Section 2G1.1(c) (2) states:

If the offense involved criminal sexual abuse, attempted criminal sexual abuse, or assault with intent to commit criminal sexual abuse, apply sec. 2A3.1 (Criminal Sexual Abuse; Attempt or Assault with the Intent to Commit Criminal Sexual Abuse).

/10 No written motion to suppress was ever filed.

/11 Although Angle first raises this argument on appeal, we will address the merits of the Commerce Clause challenge because the government has itself waived a waiver defense by not asserting it in its brief or at oral argument. See United States v. Leichtnam, 948 F.2d 370, 375 (7th Cir. 1991); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

/12 The government asserts, in passing, that we should analyze the statute as a category two regulation (i.e., a regulation of the instrumentalities of interstate commerce, or persons or things in interstate commerce). The government apparently views components of child pornography (for example here, a videotape cassette, diskettes, and zip disks) as "things" in interstate commerce which Congress has chosen to regulate. We have some concern whether Lopez intended for category two to cover mere regulation (as opposed to protection) of things in interstate commerce. See United States v. Wilson, 73 F.3d 675, 686-88 (7th Cir. 1995). Instead, we believe sec. 2252(a)(4)(B) is better viewed as a category three regulation and, thus, we will examine the nexus between the intrastate

activity regulated and interstate commerce. See Lopez, 514 U.S. at 559.

/13 In this sense, sec. 2252(a)(4)(B) also differs from the statute at issue in United States v. Morrison, 529 U.S. 598 (2000), where the Supreme Court struck down the Violence Against Women Act (VAWA), 42 U.S.C. sec. 13981, on the ground that it exceeded Congress's power under the Commerce Clause. In striking down sec. 13981 of the VAWA, the Court relied, in part, on the fact that sec. 13981, like the gun control law struck down in Lopez, was directed only to noneconomic criminal activity.

/14 Angle further contends that even though there was testimony that he gave a number of computer diskettes to his friends and arranged for the erasure of those diskettes days before the search, there was no evidence showing that the diskettes contained child pornography or that the diskettes had traveled in interstate commerce as required by sec. 2252(a)(4)(B).

/15 Although this evidence (along with the confiscated child pornography videotape) satisfies the statutory requirement for "3 or more" matters, we comment briefly on the evidence relating to the deleted pornography files. The government put forth testimony, through McDonnell, that a computer utilities program can recover deleted information on a diskette that has not been overwritten with new information. The specialized utility program, in effect, decodes the deleted information (here images) in order to render it viewable to the naked eye. In this sense, the government claims that the pornographic images always existed on the confiscated diskettes and zip disks. While admitting that the diskettes once contained child pornography, Angle insists that he had no knowledge on how to recover the deleted files or images. When queried by the court, however, Angle testified (rather convincingly) about his familiarity with computers such that the court (here, the factfinder) could have disbelieved his assertion that he did not know how to recover the deleted files on the diskettes and zip disks found at his residence. In the circumstances of this case, the government asserted a plausible theory that Angle merely deleted the files in order to "safe harbor" his collection of child pornography. The import of this theory being that Angle possessed, with the requisite knowledge, pornography (though deleted, but recoverable) on the confiscated diskettes and zip disks. That said, however, it is unnecessary to reach the question of whether this evidence standing alone (or in combination with the confiscated child pornography videotape) is sufficient to support

the conviction.

/16 We have previously construed the statutory language "other matter" as anything which is capable of containing a visual depiction. United States v. Hall, 142 F.3d 988, 999 (7th Cir. 1998).

/17 Rule 414 provides in relevant part: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."

/18 Under Rule 414(d), a "child" means a person below the age of fourteen. Angle contends that the 1977 conviction involved a fifteen year-old male and the 1987 conviction involved a child who was between twelve and sixteen years old during the three-year period over which the crime took place.

/19 Rule 413 applies only "[i]n a criminal case in which the defendant is accused of an offense of sexual assault" and makes admissible "evidence of the defendant's commission of another offense or offenses of sexual assault."

/20 Angle made various statements to Jeff/Wolf One in an effort to gain his affection and trust, for instance, "I've missed you so much," "you know if you were with me," "I've got a lot of feelings for you," "I love you," "sweet dreams to my lover boy, "if you were here I would be all over you," "I do not think you have had any one to really care a whole lot about you," and "I get excited by talking to you and you make my day." Angle also indicated his desire to be with Jeff/Wolf One sexually by asking: "do you want to feel me inside of you," "been keeping it hard for me," "you going to let me make love to you," and "have you been sleeping naked lately." Furthermore, Angle offered to visit Jeff/Wolf One in Colorado and tried to get his address.

/21 Rule 404(b) states in part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

/22 While the district judge did not specifically indicate that the departure was granted pursuant to U.S.S.G. sec. 4A1.3, he did cite provisions of that guideline and the parties agree that sec.

4A1.3 was the only basis upon which the court could have granted the upward departure.

/23 Angle argues that the extent of the departure was unreasonable. Even though we have noted that the district court offered no explanation for the extent of the departure, Angle offers his own "possible" explanations. In light of the remand on the departure issue, we decline to accept or reject an explanation that the district court may never have considered. See Tai, 994 F.2d at 1214.

/24 These code sections (which are part of the sexual abuse chapter) govern "sexual act[s]," as defined by 18 U.S.C. sec. 2246, which are unlawful in specified situations. Guideline sec. 2A3.1 generally applies to conduct violating sec.sec. 2241 and 2242.

/25 The "offense of conviction" only encompasses conduct "charged in the count of the indictment or information of which the defendant was convicted." U.S.S.G. sec. 1B1.2(a).

/26 In United States v. Butler, 92 F.3d 960, 963 n.6 (9th Cir. 1996), the Ninth Circuit mentioned (in a footnote) that the lower court had declined to apply sec. 2A3.1 because the victims were fictional. The court, however, never addressed the meaning or scope of the term "victim," and made no ruling on this question one way or another.

/27 In further support of requiring presentencing notice, the Coenen court found that the sex offender registration requirement was analogous to an order requiring a defendant convicted of an offense involving fraud or other intentionally deceptive practice to give notice of the existence and nature of the conviction to victims, pursuant to 18 U.S.C. sec. 3555. Coenen, 135 F.3d at 941-42 (noting in this regard that 18 U.S.C. sec. 3553(d) requires presentencing notice: "[p]rior to imposing an order of notice pursuant to section 3555, the court shall give notice to the defendant and the Government that it is considering imposing such an order").